[Crim. No. 25094. Second Dist., Div. Four. Mar. 19, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD JAMES JOCHEN, Defendant and Appellant.

## COUNSEL

Lewis Metzinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., Theodora Berger and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—Defendant was charged: (count I) with burglary, in violation of section 459 of the Penal Code; and (count II) with possession of a firearm, being previously convicted of a felony, in violation of section 12021 of the Penal Code. After a trial by jury, he was found guilty on both counts and was sentenced to state prison, the sentences to run concurrently. He has appealed;[1] we affirm as to count II and reverse as to count I.

The police received a "tip" that defendant had committed, or was involved in the commission of, a burglary. The officer assigned to investigate that tip examined the police records on defendant. He discovered, inter alia, facts suggesting that defendant might be on parole. The officer called the local parole office and (after a check of their records had been made) was advised that defendant was on parole and that he was a "parolee-at-large"—i.e., that he was not reporting to his parole officer and had not reported a current address. The parole agent asked the police officer for help in locating defendant. Thereafter, the

---

[1] The notice of appeal is from both the judgment and the order denying a 1538.5 motion. The latter order is not separately appealable, being reviewable on the appeal from the judgment. We dismiss the purported appeal from the order.

officer was advised that an order for defendant's arrest had been issued by the parole agents.

With that information, coupled with other information, the officers discovered defendant and a companion eating in a restaurant. They waited until the pair had left the restaurant and had driven out of the parking lot. Several officers then stopped the vehicle, ordered defendant and his passenger to alight, handcuffed them and arrested them. Because defendant said that the vehicle sometimes moved by itself, the officer reached into the vehicle to turn off the ignition. He saw the handle of a firearm protruding from under a seat, removed it and discovered that it was loaded.

The police, purportedly looking for the registration certificate, opened the glove compartment and discovered, in plain sight, items of jewelry, which were later identified as part of the fruits of the burglary herein involved. They opened the trunk of the vehicle and discovered other fruits of the burglary and a wrench.

## I

■ It is argued that the stopping, arrest and search were unlawful because the reliance on the parole hold was a mere sham to support what was, in reality, only a police investigation.

We disagree. Unlike *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], on which defendant relies, the police here not only knew of defendant's parole status, but were acting pursuant to a specific request from the parole agents to apprehend defendant.

It is clear from the record that the police, here, although having their own reasons for wanting at least to interrogate defendant, were acting as the agents of the parole agents who had a legitimate reason of their own for wanting defendant apprehended. He was a parole violator, both for not reporting and for not maintaining a current address with the agents; in addition, the fact that the police suspected defendant of a new crime was itself sufficient to alert the parole agents to the necessity of investigating defendant in detail.

## II

■ It is argued that, even assuming the validity of the arrest, the

search of the vehicle was unlawful as being too extensive. Counsel admits that, if the arrest was lawful, the discovery of the firearm was lawful; he attacks only the search of the glove compartment and of the trunk.

We conclude that the search both of the glove compartment and of the trunk was unlawful.

The cases dealing with warrantless searches of automobiles have held that such a search is proper if there exists probable cause to search under circumstances of some urgency, even though the urgency may not be as great as is required for warrantless searches of homes and offices. (*People* v. *Dumas* (1973) 9 Cal.3d 871, 882, fn. 9 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Hale* (1974) 43 Cal.App.3d 353 [117 Cal.Rptr. 697]). However, in the case at bench, we find neither probable cause or urgency to support the search of the glove compartment and no urgency to support the search of the trunk.

Although, as an afterthought, the People now seek to support the search of the glove compartment on the theory that the officers, having found one loaded gun, might reasonably suspect that more weapons were in the car, the searching officer testified that he searched the glove compartment only to secure the registration certificate.[2] We know of no authority that makes a search for a registration certificate any different from the search for any other article. While subdivision (a) of section 4462 of the Vehicle Code gives an officer the right to demand exhibition of a registration certificate, and while such a demand, if made, often results in a consent to open a glove compartment or in an opening by a defendant that reveals, in plain sight, contraband, where, as here, there was no demand and no consent, the officer could lawfully open the glove compartment only if some urgency existed.

We can find no urgency here. The officer already had, by communication with the Department of Motor Vehicles, knowledge that defendant was the registered owner of the car; if he wanted any further details, they could well await until he had authority to search. Furthermore, the record indicates not only that both occupants were under arrest and handcuffed outside of the vehicle, but that a substantial number of officers were present, so that, as in *People* v. *Koehn* (1972) 25 Cal.App.3d

---

[2]The record indicates that one officer, after the discovery of the gun, searched the front seat area to ascertain if there were other weapons. He did not indicate that he had looked in the glove compartment.

799 [102 Cal.Rptr. 102], there was no reason to suspect that the car would not remain safely in police custody until it was impounded and removed to the police garage, and a warrant was obtained.[3]

It is true that, after finding the jewelry in the glove compartment, the officers then had, for the first time, reasonable cause to search the trunk for more proceeds of the burglary. But that cause rested on the unlawful search of the glove compartment and was a fruit of that illegality. Of course, the same lack of urgency that invalidated the search of the glove compartment still existed at the time of the search of the trunk.

While, as we point out below, there was some evidence other than that obtained by the search of the car to support a finding of guilt on count I, we cannot say that the verdict on the burglary count would have been the same without the illegally obtained evidence.

### III

Defendant urges other alleged errors. They involve matters not likely to arise on a retrial if one is held.

The judgment on count II is affirmed; the judgment on count I is reversed; the purported appeal from the order denying the motion made under section 1538.5 is dismissed.

Jefferson, Acting P. J., and Cole, J.,* concurred.

A petition for a rehearing was denied April 7, 1975, and respondent's petition for a hearing by the Supreme Court was denied May 14, 1975. Clark, J., was of the opinion that the petition should be granted.

---

[3]In fact, the record indicates that, after the searches herein involved, some of the arresting team did drive the car to the police garage, where an inventory (again warrantless) was taken.

*Assigned by the Chairman of the Judicial Council.