[Crim. No. 19946. First Dist., Div. Three. May 22, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
GARY EMAN VODAK et al., Defendants and Respondents.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Alvin J. Knudson, Deputy Attorneys General, for Plaintiff and Appellant.

David Brick, under appointment by the Court of Appeal, Richard Eugene Draper and Floyd J. Silliman for Defendants and Respondents.

OPINION

RHODES, J.*—By information filed May 16, 1979, respondents Gary Eman Vodak and James Reginald Dickey were charged with six felonies: burglary (Pen. Code, § 459); grand theft (Pen. Code, § 245, subd. (a)); receiving stolen property (Pen. Code, § 496); tampering with a vehicle (Veh. Code, § 10852); and grand theft (Pen. Code, § 484). The information further alleged that as to counts one and three respondents were armed with firearms as defined in Penal Code section 12022, subdivision (a). On June 13, 1979, the trial court granted respondents' Penal Code section 1538.5 motion to suppress evidence (contents of a trunk of a vehicle seized without a search warrant). Later (July 2, 1979), another judge dismissed this case pursuant to Penal Code section 1385. The People filed notice of appeal on July 18, 1979.

In the early morning hours of April 10, 1979, Capitola Police Officers Granata and Corron received a series of broadcasts. The first

---

*Assigned by the Chairperson of the Judicial Council.

reported a burglary of shotguns and handguns in Watsonville, and provided a description of the car seen leaving the scene; the second reported a gas-siphoning by occupants of a similar car, a light-colored Ford, and an attempt by the latter to force the victim vehicle off the road, possibly with gunfire; a third reported that the Ford was in Capitola, and that its occupants were presently engaged in stealing a tire.

Granata and Corron responded to the last call and found defendant Vodak, with a tire jack and iron, in front of a green Mustang. Vodak was ordered to lie prone and did so.

Defendant Dickey was found seated behind the wheel of a white 1969 Ford whose motor was running. The driver's door was open. As Granata approached, Dickey lunged toward the backseat and reached for his waistband. Granata forced Dickey from the car at gunpoint. As he did so he saw 10 to 12 shotgun shells on the floor of the car. When Dickey failed to comply with an order to show his hands he was forced to the ground. A struggle ensued and he was beaten about the head when he resisted. Thereafter he was handcuffed. Vodak was handcuffed immediately after Dickey.

Upon further examination of the passenger compartment of the car, the officer noticed two red five-gallon gas cans on the rear seat. Underneath the left rear of the vehicle, Granata observed an expended shotgun round which "smelled fresh when I picked it up."

Several minutes later Corron reminded Granata that the car from which Dickey had been removed fit the description of the car seen leaving the Watsonville shotgun and handgun robbery. Granata and Corron searched the general area outside the car for weapons and found none. Then Granata took the keys from the ignition and opened the trunk. There, in plain view, were four shotguns, later identified as those stolen earlier that morning. Granata could not recall whether two other Capitola officers arrived at the scene to assist before or after the trunk search. Two deputies from Santa Cruz County Sheriff's Department apparently arrived after the search. The appellants were arrested and charged with various felonies.

Due to the greater expectation of privacy normally invested in the trunk than the passenger compartment of an automobile, in *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 568 [128 Cal.Rptr. 641, 547

P.2d 417], the Supreme Court held that a trunk may not be searched without a warrant unless the police have specific cause to believe that contraband or evidence of a crime is hidden in that particular area of the automobile. In the instant case the trial court determined that such specific probable cause existed here. Indeed, Granata's discovery of the shotgun shells on the floor of the car and the expended shotgun shell under Dickey's vehicle, amply supports the conclusion that the police officer not only had probable cause to believe that the shotguns stolen in Watsonville were in the trunk, but that the weapons were loaded.

However, the trial court held that, in addition to the independent quantum of probable cause needed to search the trunk of Dickey's vehicle without a warrant, exigent circumstances also had to have been present to justify the search. The court "reluctantly" concluded that the state had not met its burden to prove that such conditions prevailed and suppressed the fruits of the trunk search due to the failure of the officers to have obtained a warrant.

That any exigency greater than that supplied by the fact that an automobile is stopped on a public street is necessary before an automobile trunk may be searched is certainly not self-evident from the facts of either United States or California Supreme Court cases involving trunk searches. (See, e.g., *Texas* v. *White* (1975) 423 U.S. 67 [46 L.Ed.2d 209, 96 S.Ct. 304]; *People* v. *Minjares* (1979) 24 Cal.3d 410, 423 [153 Cal.Rptr. 224, 591 P.2d 514], cert. den. (Oct. 2, 1979) 444 U.S. 887 [62 L.Ed.2d 117, 100 S.Ct. 181]; *Wimberly, supra*, 16 Cal.3d at pp. 568-573; *People* v. *Gale* (1973) 9 Cal.3d 788, 797 [108 Cal.Rptr. 852, 511 P.2d 1204]; *People* v. *Dumas* (1973) 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208].) Nonetheless two Courts of Appeal have recently construed the Supreme Court's "closed container" decisions in *Minjares, supra* and *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467], together with the greater privacy interest identified in *Wimberly*, to find that only an "emergent necessity" or true exigency can justify a warrantless auto trunk search based on the requisite probable cause. (*People* v. *Rodriguez* (1980) 102 Cal. App.3d 510, 523 [162 Cal.Rptr. 535]; *People* v. *Gott* (1979) 100 Cal. App.3d 1, 4 [160 Cal.Rptr. 307]. See also *People* v. *Jochen* (1975) 46 Cal.App.3d 243, 247 [119 Cal.Rptr. 914]; *People* v. *Koehn* (1972) 25

Cal.App.3d 799, 805 [102 Cal.Rptr. 102]. But see *People* v. *Superior Court (Sanders)* (1979) 99 Cal.App.3d 130, 134 [160 Cal.Rptr. 366]; *People* v. *Remiro* (1979) 89 Cal.App.3d 809, 827-828 [153 Cal. Rptr. 89].)

Even if we accept the formulation proposed in *Rodriguez* and *Gott, supra,* we must take issue with the trial court's decision to suppress in the instant case. In *Rodriguez* and *Gott,* with all suspects in custody, six and eight officers, respectively, undertook a search for drugs. In the instant case, not only were fewer officers present, but the items believed to be present were loaded weapons. We have previously noted that the presence of inherently dangerous objects could justify an immediate search. (*People* v. *Pace* (1979) 92 Cal.App.3d 199, 203 fn. 1 [154 Cal. Rptr. 811], citing *United States* v. *Chadwick* (1976) 433 U.S. 1, 4 [53 L.Ed.2d 538, 543-544, 97 S.Ct. 2476]; see also *United States* v. *Newbourn* (4th Cir. 1979) 600 F.2d 452, 456.) Rather than expose the public or themselves to the risks attendant upon having Dickey's vehicle towed or awaiting the arrival of a warrant, it was prudent and, we believe necessary, for the officers to have searched the trunk when they did.

The order granting the motion to dismiss is reversed.

White, P. J., and Scott, J., concurred.

A petition for a rehearing was denied June 20, 1980, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied July 29, 1980. Clark, J., and Manuel, J., were of the opinion that the petition should be granted.