[Crim. No. 36274. Second Dist., Div. One. Jan. 19, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLTON LAMONT WESTON, Defendant and Appellant.

[Crim. No. 37891. Second Dist., Div. One. Jan. 19, 1981.]

In re CARLTON LAMONT WESTON on Habeas Corpus.

COUNSEL

Louis R. Hersh, under appointment by the Court of Appeal, and Bednar & Hersh for Defendant and Appellant and Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and John A. Saurenman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

AUERBACH, J.*—In an information, defendant was charged with robbery in violation of Penal Code section 211. The information was amended during trial to charge defendant with receiving stolen property (Pen. Code, § 496).

---

*Assigned by the Chairperson of the Judicial Council.

Defendant's motions pursuant to Penal Code sections 995 and 1538.5 were denied. After jury trial, defendant was found guilty of robbery as charged in count 1 and not guilty of receiving stolen property as charged in count 2. Defendant was sentenced to state prison for the upper-base term of five years. He appeals from the judgment of conviction and has concurrently filed a petition for habeas corpus predicated on the incompetence of counsel.

A. Evidence at the Suppression Hearing

The facts adduced at the suppression hearing were relatively brief.[1] On January 23, 1979, a police officer took a report concerning a robbery of a jewelry store in Duarte. The information he received was promulgated through police channels. Among the policemen who received the teletype report were Officers Nielsen and Jacobs. The report indicated that there were four black individuals involved in the robbery. A black man, about five feet six inches tall, carried a gun into the store in the company of a woman accomplice. A man about twenty years old, six feet two inches in height with a thin build was outside the store seated in what proved to be the getaway vehicle, a 1970 Cadillac with only a front license plate (No. 127AOQ). A fourth man was also somewhere on the scene. The Cadillac had body work or damage on the passenger side, a gray primer spot on the trunk and right rear quarter panel and a CB antenna on its trunk. The officers knew that $200 in cash and a quantity of jewelry had been taken in the robbery and that a gun had been used in the crime. This same information was also known to Officers Fant and Fetterline, who participated in later events with Officers Nielsen and Jacobs.

About four days after the robbery, Jacobs and Nielsen saw an unoccupied parked car that in all respects matched the getaway Cadillac, save that the digits on the license plate were different. The car was parked at the curb of Milbray Street. At the request of Nielsen, a backup unit consisting of Officers Fant and Fetterline were sent to the scene, and the four officers took up a surveillance of the car. About 10 minutes later, the Cadillac was seen approaching the vantage point of Nielsen and Jacobs and continuing beyond. The officers followed. After trailing the vehicle for about a mile, the officers stopped it and ordered

---

[1]Defendant's section 1538.5 motion was heard by the Honorable Mary Goode Rogan. The trial judge was the Honorable Dickran Tevrizian, Jr.

defendant to emerge and approach their location. When he did so, it was found that he matched the description of the driver of the Cadillac at the robbery scene. Upon questioning, he told the officers he was coming from his girl friend's house on Milbray Street. He was thereupon searched and placed under arrest for robbery. All four officers were present at this time.

While defendant remained in the custody of Officer Fetterline at the police car, Officers Jacobs, Nielsen and Fant undertook to search the Cadillac. There being nothing in plain sight,[2] they searched the passenger compartment. They found secreted in the recesses of the seats three brand new rings, which are the items sought to be suppressed.[3]

B. Evidence at the Trial

1. The People's Case

On January 23, 1979, between 4 and 4:15 p.m., Roger Hammond admitted two black men and a black woman to his jewelry store. One of the men talked with Mr. Hammond about a watch and the three individuals left the store and walked to a green Cadillac with primer paint on the driver's side and an antenna on the trunk. One of the men and a female returned to the store; the man pulled out an automatic pistol and ordered Mr. Hammond and his wife into a bathroom in the rear. Mr. Hammond heard the front door being unlocked and other people entering. He next heard the sound of glass breaking and of inquiries regarding the location of the cash register. The Hammonds left the back room when it was safe to do so and found the top of the diamond case smashed and the case looted. They discovered that money was missing from the cash register.

---

[2]Officer Nielsen searched the right and left front driver's side of the Cadillac but found nothing of interest. Officer Fant had to insert her hand into a crack in the seam of the rear seat where it meets the back part of the seat in order to locate a ring. Officer Jacobs testified he found two rings on the right front passenger's seat. At the trial, he testified more fully, explaining that the rings were "pushed in between the back rest of the seat and the cushion part of the seat coming together, sort of hidden." With commendable discipline, neither the prosecutor below (who apparently knew the facts from the police report) nor the Attorney General on appeal, has sought to exploit Officer Jacobs' somewhat misleading testimony by arguing that the rings were in plain sight and so subject to seizure without a search.

[3]Some live ammunition was also unearthed later in the course of the search when the seats of the Cadillac were removed, but it was not offered in evidence. We need not, therefore, discuss in this opinion this facet of the search.

****

George Attar, manager of an adjacent store, observed the black male, six feet two inches or six feet three inches tall, later identified as defendant, come into his store at about 4:15 p.m., look at the cash register and leave. Attar observed defendant go to the jewelry store and knock. Two or three minutes later he observed a green Cadillac with gray on the trunk and an antenna on the rear in the alley behind the jewelry store. Attar's brother recorded the license plate number. A few minutes later four black persons, one of whom was a woman, came running to the car, jumped in and drove away. Attar believed, although he was not certain, that one of those persons was defendant.

At about 3:20 a.m. on January 28, 1979, Deputy Jacobs observed the Cadillac under the circumstances described in section A, *ante*. Defendant was ordered out of the car, was handcuffed and placed in the back of the police vehicle. Some of the stolen rings were recovered after a search of the passenger compartment.

Jacobs then advised defendant of his *Miranda* rights and told him he was under arrest for robbery of the jewelry store. Although defendant was not told the date of the robbery or that a gun was used or that jewelry had been taken, defendant denied committing the robbery, asked if any jewelry or guns were found in his car and said he could account for his whereabouts four days earlier. Defendant was shown the rings when booked and, when asked if they belonged to him, replied that if they were found in his car then they must be his. In a later interview, defendant would not say where he got the rings. When advised that the rings had come from a robbery, defendant said he did not know how they got into his car.

2. The Defendant's Case

Defendant testified that on the afternoon of January 23, he and his girl friend, Vivian, and her mother, Mrs. McLaurin, drove his green Cadillac to the home of Vivian's grandmother in Duarte. They did not leave the house until evening. On January 28, he was coming from Mrs. McLaurin's home when the police stopped and arrested him. He was placed in the police car and handcuffed and could see the deputies ransacking his car. He denied that he was advised of his constitutional rights. When told about the charge of robbery, he asked if a gun had been found in his car because he associated the robbery with gun use. The officers told him that no gun or jewelry was found in the car. He

asserted that an officer stated that the offense had occurred a few days earlier. When the deputies asked about the rings, he said he could not tell them anything. A deputy told him the offense looked like an amateur job and although they did not think he committed the crime, they believed he had information concerning it. Defendant said he knew nothing about it.

## C. The Amendment of the Information

The trial started on Thursday, August 9, at 2 p.m., on the charge of robbery. On Friday, August 10, at 11:55 a.m., the prosecutor moved to amend the information to add a second count of receiving stolen property. The defendant's objection, on the ground it was untimely, was overruled and the amendment permitted as within the scope of the evidence adduced. Thereupon, defendant's counsel requested "time to prepare" for the added count. The court granted the request and immediately recessed to Monday, August 13, at 9:30 a.m. Although defendant's counsel asked that the time on Monday be set for 10:30 a.m., he asked for no further continuance and no more time when his request was denied. The People's case was concluded on Monday, and on the following day counsel started his defense without objection. Defendant does not challenge the propriety of the amendment, which meets the requirements of Penal Code section 1009.

### ISSUES

Appellant urges the following contentions: (1) the court erred in denying the motion to suppress under Penal Code section 1538.5; (2) that the continuance was insufficient as a matter of law, and (3) that trial counsel failed to provide effective representation.

## I. THE MOTION TO SUPPRESS UNDER PENAL CODE SECTION 1538.5 WAS PROPERLY DENIED

The issue here involved is the validity of the warrantless search of the passenger compartment of defendant's vehicle. Defendant argues that in order to justify the search without a warrant, both probable cause and exigent circumstances were required, neither of which existed. There is no merit to this argument.

It is the state's burden to justify a warrantless search of the passenger compartment of an automobile by showing probable cause

existed for the search. (*People* v. *Hill* (1974) 12 Cal.3d 731, 747 [117 Cal.Rptr. 393, 528 P.2d 1]; *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 562-564 [128 Cal.Rptr. 641, 547 P.2d 417].) The People do not contend that the search was justified as being incident to a lawful arrest. The People urge that the warrantless search was reasonable because there was probable cause to believe that the car contained evidence of the crime (stolen jewelry or the gun). It bears mentioning that the jewelry retrieved by the police was discovered in the passenger section of the vehicle concealed in recesses of the seats; neither the trunk nor glove compartment of the vehicle was penetrated to locate these items.[4]

The automobile occupies a lowly status in the pantheon of privacy expectations afforded by the federal and state Constitutions (*People* v. *Dumas* (1973) 9 Cal.3d 871 [109 Cal.Rptr. 304, 512 P.2d 1208]), and the spectrum of privacy expectations in the anatomy of the automobile appears to change as the search progresses from the passenger area to glove compartment to trunk. (*Wimberly* v. *Superior Court, supra*, 16 Cal.3d 557, 563; *People* v. *Minjares* (1979) 24 Cal.3d 410, 423 [153 Cal.Rptr. 224, 591 P.2d 514]; *People* v. *Fraijo* (1977) 78 Cal.App.3d 977, 981 [144 Cal.Rptr. 424].) The *sine qua non* of law enforcement's right to conduct a warrantless search is the element of probable cause, i.e., specific articulable facts which give reasonable cause to believe that seizable items are contained in the vehicle at the time of the search. As phrased in *Wimberly* v. *Superior Court, supra*, 16 Cal.3d at page 564: "We have often stated that probable cause for a search exists where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched."

 When the officers came upon the vehicle, and arrested defendant, only four days had elapsed since the armed robbery in which defendant had participated. The officers recognized defendant from the

---

[4]Since neither a closed container nor a glove compartment nor the trunk of the Cadillac produced the stolen objects, we do not engage in extended discussion concerning the cases requiring search warrants for the intrusion into such areas, under circumstances where probable cause is not conjoined with exigent circumstances. (See *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586]; *People* v. *Cook* (1975) 13 Cal.3d 663, 669 [119 Cal.Rptr. 500, 532 P.2d 148]; *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467].) The issue begotten by these cases is a Shepard's delight.

description and the Cadillac was identified as the escape car.[5] Because of the relative recency of the crime, and the connection of defendant and his car with it, the officers possessed sufficient information at the time they arrested defendant to create a "strong suspicion" in their minds that the Cadillac might currently contain evidence of the crime —a gun or stolen property. (*Wimberly* v. *Superior Court, supra,* p. 564.) Such items were indeed found by a search requiring no greater intrusion into the vehicle than an examination of the seats in the passenger compartment. ■ The fact that defendant was in custody outside the Cadillac and a total of four officers were present, does not vitiate the search. A significant body of California law sanctions an on-the-street, vehicular warrantless search for weapons or for evidence of a crime founded upon probable cause, particularly where it is limited to the passenger compartment of the vehicle, even though the arrestee is immobilized in police custody. (*Wimberly* v. *Superior Court, supra,* pp. 562-566; *People* v. *Hill* (1974) 12 Cal.3d 731, 747 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on another point in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Laursen* (1972) 8 Cal.3d 192, 201 [104 Cal.Rptr. 425, 501 P.2d 1145]; see *People* v. *Superior Court (Baker)* (1980) 111 Cal.App.3d 726, 732 [168 Cal.Rptr. 797]; *People* v. *Vodak* (1980) 105 Cal.App.3d 1014, 1017 [164 Cal.Rptr. 785]; *People* v. *Paul* (1978) 78 Cal.App.3d 32, 46-49 [144 Cal.Rptr. 431].) Since the warrantless search of the interior of an automobile based on probable cause meets the constitutional test of reasonableness because of the diminished expectation of privacy in that area of the car (*Wimberly* v. *Superior Court, supra,* pp. 562-566; *People* v. *Laursen, supra*), the fact that a number of officers are in control of the vehicle and the defendant during their field encounter, does not serve to negate their legitimate right to search the passenger compartment of the car for a gun or stolen property reasonably believed might be found there. (*People* v. *Superior Court (Baker) supra,* 111 Cal.App.3d 726, 732; *People* v. *Vodak, supra,* 105 Cal.App.3d 1014, 1017.)

But assuming, arguendo, that the urgency of exigent circumstances is superimposed as an additional requirement for an immediate search, a proposition of dubious validity in view of the restricted nature of the

---

[5]The physical appearance of the Cadillac matched perfectly the description of the getaway vehicle except that its license plate read "107 AOQ" instead of "127 AOQ."

search conducted in this case, that test is satisfied by the fact that the automobile was detained between 3 and 4 o'clock in the morning and that there was reason to believe a gun was present in the vehicle. (*People* v. *Vodak, supra*, p. 1018.)

Neither *People* v. *Koehn* (1972) 25 Cal.App.3d 799 [102 Cal.Rptr. 102] nor *People* v. *Jochen* (1975) 46 Cal.App.3d 243 [119 Cal.Rptr. 914], cited by defendant, is controlling in this case. In *Koehn*, after defendant was arrested for carrying a concealed weapon, which could be seen through the windshield of the car, the officer made a comprehensive search of the vehicle. He pried open a locked tire well with a crowbar and found narcotics. The conviction was reversed because the search was unreasonably expansive in the light of the circumstances at the time the vehicle was stopped. In this case, the search was not of the same intolerable intensity as was found to be the case in *Koehn*. In *Jochen*, the officer was investigating a "tip" that defendant, a parolee, "had committed, or was involved in the commission of, a burglary." Defendant was stopped in his vehicle and the officer was able to observe, under the seat, a weapon which proved to be loaded. Although the police officers already knew defendant was the registered owner of the car, they opened the glove compartment under the pretext that they were looking for his registration. Stolen jewelry was found there. Other stolen property was found when the trunk was opened. In reversing the conviction, the court held that there was "neither probable cause or urgency to support the search of the glove compartment and no urgency to support the search of the trunk." (P. 247.) *Jochen* may be distinguished because in this proceeding neither a closed compartment nor a trunk was searched to produce the items sought to be suppressed, while the essential element of probable cause which was here present was lacking, in *Jochen*, to justify a search of the glove compartment.[6]

We hold, therefore, that the constitutional rights of defendant were not violated because there was probable cause and valid reasons existed to search the passenger compartment of defendant's car. The denial of the motion to suppress was correct.

---

[6]Because *Jochen* is distinguishable for the reasons mentioned, we do not discuss the vitality of statements in that opinion concerning the effect of the presence of numerous officers and defendant's immobilization on the right to conduct a warrantless search of a vehicle.

## II. THERE WAS NO ABUSE OF DISCRETION WITH RESPECT TO THE MOTION FOR CONTINUANCE

■ Defendant contends the trial court committed error in granting only a short continuance after allowing the information to be amended to allege an additional violation of receiving stolen property. Whether a continuation should be granted and its length are matters within the sound discretion of the trial court. (*People* v. *Witt* (1975) 53 Cal. App.3d 154, 165 [125 Cal.Rptr. 653].) Whether a defendant has affirmatively demonstrated that justice requires a continuance is a factual matter and, in the absence of an abuse of discretion, the trial court's determination will not be disturbed on appeal. (*People* v. *Murphy* (1973) 35 Cal.App.3d 905, 920 [111 Cal.Rptr. 295].) There is manifest in the record no abuse of judicial discretion. First, defendant was not, as he here urges, "denied the right to prepare properly." He did not make such a claim in the court below and has failed to explain herein in what manner he was not prepared to defend against the receiving charge. Second, if defendant was "denied the right to prepare properly," it resulted from his own failure to demonstrate affirmatively that justice required a further continuance. He did not tell the trial court that a continuance greater than two and one-half days was required and did not specify the amount of time he desired. Although he told the court on Monday, that he had previously mentioned that if the information was amended he would not be able "to do any investigation on that," he did not renew his request or ask for a further continuance on Monday, nor at the conclusion of the People's case that afternoon, nor at the outset of the defendant's case on Tuesday morning. A motion for a new trial was not made.

Thirdly, defendant has established no prejudice. His sworn defense to the robbery—that he did not know how the stolen jewelry got into his car—which is consistent with his extrajudicial statements to the officers upon his arrest, was equally appropriate against the receiving stolen property charge. In this connection, it is of significance that defendant was found not guilty of receiving stolen property, so that any assumed error was innocuous.

## III. DEFENDANT WAS NOT DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

Defendant postulates a plethora of "errors and omissions" on the part of his trial counsel in furtherance of his contention that he was denied

adequate representation. He asserts that his counsel failed to investigate the case fully, failed to argue to the jury that the burden of proof was on the prosecution, failed to properly object to the short continuance following the amendment of the information, failed to seek a mistrial thereafter, failed to discuss the conflict in the testimonies of the officers concerning when the actual arrest occurred, failed to pursue defendant's claim that he was never read his *Miranda* rights, and questioned a witness in such manner that the prosecution was furnished information that resulted in the impeachment of that witness. These claims are demonstrably untenable.

■ "The burden of proving a claim of inadequate trial assistance is on the appellant. [Citation.] Thus, appellant must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, appellant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].)

### 1. The Claim of Inadequate Investigation

Defendant's girl friend, Vivian, and her mother, Mrs. Wyvette McLaurin, each testified in support of defendant's alibi that the defendant was with them at a party at the home of Vivian's grandmother in Duarte during the time the robbery occurred (between 4 to 4:15 p.m., on Jan. 23). Vivian named others present at the party and Mrs. McLaurin testified she was there during the afternoon until about 8 or 8:30 p.m. On rebuttal, employment records were produced showing that Mrs. McLaurin was at work from 3:30 p.m. to 11:25 p.m. of January 23. ■ Defendant contends that his counsel could have ascertained by reasonable inquiry that Mrs. McLaurin lied about being at the party (the basis of his alibi), and thereafter he failed to call other witnesses whom Vivian named as being present. There is nothing in the record that indicates that defendant's trial counsel failed to investigate anything relating to defendant's alibi defense. The testimonial fabrication by Vivian and Mrs. McLaurin placed defense counsel in a precarious situation requiring sensitive, tactical decisions. It would have done little good for counsel to bring in others to perpetuate the lie and risk further impeachment. Moreover, it would have been a contravention of counsel's professional ethics as an attorney to knowingly allow a witness to testify falsely. (*People* v. *Pike* (1962) 58 Cal.2d 70, 97 [22 Cal.Rptr.

664, 372 P.2d 656].) The risk of calling them as defense witnesses was great because of the possibility that they too would be impeached or create a conflict with defendant's testimony or in some way fail to corroborate his alibi. Under the circumstances, it appears that defense counsel used the proper strategy in letting the matter rest without exploring it further. Moreover, nothing suggests, nor does defendant assert, that the other potential witnesses at the party were not contacted and interviewed by defense counsel. (*People* v. *Jackson* (1980) 28 Cal.3d 264, 288 [168 Cal.Rptr. 603, 618 P.2d 149].) As the Supreme Court stated in the *Jackson* case, (*Ibid.*, at p. 289): "We have never required counsel to investigate all prospective witnesses [citation] and we cannot presume prejudice from the mere fact of counsel's alleged inaction. ... Further, defendant must 'affirmatively show that the omissions of defense counsel involved a crucial issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics.' [Citation]."

■ George Attar testified he saw defendant and three suspects run to the Cadillac in the alley after the robbery. Defendant asserts "there is evidence" he suffers from a physical disability which now has been diagnosed as a total disability making it "virtually impossible" for him to run any distance and his counsel failed to introduce it at the trial to negate Attar's testimony. Assuming such evidence existed, nothing indicates that defendant ever told his trial counsel of this asserted physical problem or that counsel had any idea such a condition existed. According to Attar, defendant ran only a very short distance (from the rear of the jewelry store to the car parked behind it), and nothing indicates that at the time of the robbery he was unable to run the short distance. Attar had watched defendant walk in and out of his own store prior to the robbery and Hammond had observed him walk in and out of the jewelry store 15 minutes before. Nothing in their testimony indicates defendant had any difficulty with locomotion.

2. The Claim that Counsel Failed to Object to the Short Continuance and to Move for a Mistrial

■ There is no merit to the assertion that trial counsel was incompetent because he failed to make proper objection to the length of the continuance he was granted following amendment of the information or to move for a mistrial. The record is clear that a further continuance would not have aided the defense and defendant made no effort to try.

to convince this court to the contrary. Defendant denied he knew anything about the robbery and told an officer that if the rings were found in his car they must belong to him. Although he said he did not know how they got into his car, that was the sole explanation defendant gave for the presence of the stolen jewelry in his Cadillac. At trial, defendant testified to the same effect. This testimony constitutes a defense not only to robbery but to the charge of receiving stolen property, of which he was acquitted. Under these circumstances, it is impossible to ascertain how a longer continuance would have benefited defendant. ■ The record also fails to support a motion for mistrial and undoubtedly if one had been made it would have been denied. Counsel is not required to make futile objections or motions merely to create a record impregnable to assault for claimed inadequacy of counsel. (*People* v. *Jones* (1979) 96 Cal.App.3d 820, 827 [158 Cal.Rptr. 415].)

### 3. The Claim That Counsel Failed to Argue the Prosecution's Burden of Proof

Defendant recites as another instance of alleged incompetence counsel's alleged failure to argue in his closing argument to the jury that the burden of proof was on the prosecution. This is a gross distortion of the record because defense counsel fully argued the People's burden and quoted from the CALJIC instruction on the subject.

### 4. The Claim That Counsel Failed to Pursue the *Miranda* Violation

The assertion that defense counsel failed to pursue defendant's claim he was never read his constitutional rights after his arrest is another misstatement of the record. On August 9, just prior to trial, defense counsel moved under section 402 of the Evidence Code to exclude defendant's extrajudicial statements. An evidentiary hearing was had on that motion in which Deputy Jacobs and defendant gave conflicting testimony concerning the *Miranda* advisement. After argument, the court rejected defendant's testimony and denied the motion.

### 5. The Claim of Incompetency Based on the Circumstances of Defendant's Arrest

There is likewise no merit to defendant's claim that his counsel is incompetent because he failed to discuss the conflict in the testimony of the deputies concerning when and under what circumstances his arrest

occurred. In the absence of pointing up the asserted conflicts and a showing of relevance of any such discussion at the trial of guilt or innocence, defendant has failed to show why it was necessary or that such an omission resulted in the withdrawal of a potentially meritorious defense.

6. The Claim of Irrelevant Questioning Leading to Impeachment Information

Defendant finally accuses his counsel of "irrelevant questioning" on redirect examination of Mrs. McLaurin asserting that this gave information to the prosecution that led to her impeachment. Defense counsel had no reason to suspect that Mrs. McLaurin was a prevaricator and could be caught up in her lies by the prosecutor. Defense counsel had a right to believe, and obviously did, that at the time he examined Mrs. McLaurin she was testifying truthfully. Thus, it was natural and proper for him to pin her down to the exact time she claimed she, Vivian and defendant were at, and left, the party in order to demonstrate (1) her credibility, and (2) her ability to remember.

In summation, defendant has made a totally inadequate showing to sustain his claim of trial counsel's incompetence. In every one of his volley of alleged "omissions," defendant has failed to sustain his burden of showing that trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates, and that the actions of counsel resulted in the withdrawal of a potentially meritorious defense. It is only when this burden has been met, that this court must examine the record to determine if counsel's conduct is explained. The record reflects that counsel acted as a reasonably competent and diligent advocate. He was able in his representation of defendant and zealous in protecting his interests. He made numerous motions, some pretrial, some during trial (Pen. Code, § 1538.5; Pen. Code, § 995; four separate motions under Evid. Code, § 402; a motion under Pen. Code, § 1118.1); interposed various objections and argued in support thereof; cross-examined at length the People's witnesses; and put on three defense witnesses, including defendant. The difficulty encountered by defense counsel arose not out of any lack of competence of trial counsel, an experienced public defender, but because of the untruthful testimony of a defense witness relative to her whereabouts on the afternoon of the robbery which affected defendant's alibi.

## IV. The Petition for Writ of Habeas Corpus

The petition for writ of habeas corpus deals exclusively with the alleged instances of incompetence of trial counsel as set up in defendant's opening brief. They, too, are unsupported, and the petition fails to allege facts sufficient to establish a prima facie case for relief. (*People* v. *Jackson* (1980) 28 Cal.3d 264, 298 [168 Cal.Rptr. 603, 618 P.2d 149]; *In re Lawler* (1979) 23 Cal.3d 190, 194 [150 Cal.Rptr. 833, 588 P.2d 1257].)

## Disposition

The judgment is affirmed. The petition for writ of habeas corpus is denied.

Spencer, P. J., and Lillie, J., concurred.