[Crim. No. 4469. Fifth Dist. Apr. 30, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT GEORGE MARTINEZ, Defendant and Appellant.

COUNSEL

Paula F. Schmidt, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and Anthony L. Dicce, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

ANDREEN, J.—Following a denial of his Penal Code section 1538.5 motion, defendant pled guilty to a violation of section 496 of the same code, receiving a stolen Titan .25 caliber pistol. He appeals from the resulting judgment of conviction complaining of the denial of his suppression motion which followed consideration of the preliminary hearing transcript supplemented by additional testimony.

## FACTS

A warrant was issued for the search of the person of the defendant and of premises described as 2219 River Boulevard, Bakersfield, California, based upon an affidavit which related a "tip" from a confidential informant that the defendant, who allegedly resided at the premises, had bragged that he had "just ripped off a cop." The affidavit for the warrant further established the existence of a burglary report of a victim, Wade C. Snyder, who was a deputy sheriff for Kern County. Included in the list of things taken from Snyder's residence was a Titan .25 caliber pistol.

At 9:45 p.m. on December 29, 1978, the same date as the tip (but before the issuance of the warrant), Sheriff's Deputy John Diederich began a surveillance at the River Boulevard residence. He was acting on the instructions of Investigator Hamilton who advised him that law enforcement was in the process of obtaining a search warrant for the premises. Hamilton further advised that there might be a 1966 blue Chevrolet parked there, partial license plate number TBW, which, if it were moving, might be occupied by defendant. Further, Hamilton informed Diederich that the defendant might be armed with a .25 caliber pistol in his pocket. When Diederich took up his position of surveillance, he noted the Chevrolet in the driveway.

The search warrant was secured at 12:55 a.m. on December 30. Meanwhile, the Chevrolet had been driven away. Deputy Diederich intercepted it on a nearby street and turned his vehicle around to effect a stop.[1] The Chevrolet drove into a store parking lot and parked. Diederich conducted a weapon search of the two occupants, one of which was the defendant—the driver. No weapons were found. Shortly thereafter fellow officers arrived with the search warrant for defendant's person, displayed same and then searched the Chevrolet for the specific purpose of finding the gun. At the time of the search of the vehicle there were seven or eight officers present and the defendant was in the back seat of one patrol car and the other occupant, his cousin, in the back seat of another. The Titan .25 caliber pistol was found under foam padding tucked under the driver's seat. It was not in plain view. Because the gun was described in the search warrant as an item taken in the burglary of the Snyder residence, defendant was arrested.

---

[1] No contention is made on appeal that either the stop or the short detention until the search warrant arrived was illegal.

The search warrant authorized the search of the defendant's person and the "premises located at and described as 2219 River Blvd., Bakersfield . . . and including . . . surrounding grounds including all garages, storage areas and outbuildings of any kind, attached or unattached, located thereon." The officers did not ask for nor receive a warrant authorizing a search of the Chevrolet.

### THE SEARCH OF THE CHEVROLET

■ Although the search warrant included the surrounding grounds of the River Boulevard premises and any outbuildings thereon, it did not include the Chevrolet, although sufficient information was available for the required specificity. (See *People* v. *Dumas* (1973) 9 Cal.3d 871, 881 [109 Cal.Rptr. 304, 512 P.2d 1208].) Had the vehicle been on the premises at the time of the service of the warrant, it might be argued that the warrant included in its scope a vehicle parked in the driveway. (See *People* v. *Elliott* (1978) 77 Cal.App.3d 673 [144 Cal.Rptr. 137], criticized in 2 LaFave, Search and Seizure (1978) § 4.10(c), pp. 158-160.) However, since the Chevrolet had been driven away, that theory is unavailable.

It is thus necessary to determine whether the People have sustained their burden of proving that the circumstances of the case justified a warrantless search. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

The search was not incident to a lawful arrest because the deputies did not have probable cause for an arrest at the time of the search and because defendant had been removed from the Chevrolet, handcuffed and placed in a patrol car.

■ A warrantless search of an automobile is lawful if it is supported by probable cause coupled with exigent circumstances. ■ We have no difficulty in finding probable cause. The unchallenged testimony was that the defendant might be armed with a .25 caliber pistol in his pocket. Also, it was known that defendant had boasted about burglarizing the house of a "cop," and that Deputy Snyder had suffered such a loss during which a Titan .25 caliber pistol was taken. This is sufficient information to create a "strong suspicion" of the presence of the gun.

(*Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 571 [128 Cal.Rptr. 641, 547 P.2d 417].)[2]

Before a warrantless automobile search may be made, however, there must be more than probable cause, there must be exigent circumstances. As noted earlier, the two occupants of the Chevrolet were placed in patrol cars. There were either six or seven officers present. The officers took control of the vehicle to the extent necessary to move it so that it would not be in the store patrons' way. It seems apparent that they could have secured the vehicle pending the issuance of a search warrant. Likewise, the People are not assisted by the fact, as they were in *People* v. *Dumas, supra*, 9 Cal.3d 871, that the officers were unaware of the existence of the vehicle at the time that they secured the search warrant.

Unlike *Wimberly*, our case does not involve the search of a trunk. It involves a search underneath the seat of a person whom the police had every right to believe might be in possession of a pistol. The search was for that pistol, not for drugs or other contraband. We are confronted with the question of whether because of the lesser expectation of privacy that one has for the passenger compartment of his car, and of the necessity of removing firearms from vehicles, the threshold of "exigency" is lower. A spate of recent Court of Appeal cases so indicates.

In *People* v. *Odom* (1980) 108 Cal.App.3d 100 [166 Cal.Rptr. 283] police stopped a vehicle matching the description of one driven by a murderer near the crime scene and within fifteen minutes of the crime. Without waiting for a warrant, they searched the vehicle and found the murder weapon under the front seat. The court held that the search was valid. There was recognition of the danger of loss of evidence inherent in any lengthy stakeout of the vehicle or moving and impounding it. Also, in view of the time and space relationship to the shooting scene, there was an urgent, immediate need to ascertain whether there was *no* weapon in the car in order to retrace the suspect's route to search for any discarded weapon.

*People* v. *Vodak* (1980) 105 Cal.App.3d 1014 [164 Cal.Rptr. 785] validated a search of a trunk of an automobile for weapons taken in a

---

[2]The evidence was as strong as that found in *People* v. *Fraijo* (1978) 78 Cal.App.3d 977 [144 Cal.Rptr. 424] and stronger than that found in *People* v. *Weston* (1981) 114 Cal.App.3d 764 [170 Cal.Rptr. 856].

burglary, relying on the fact that shotgun shells were found in plain view in the passenger compartment along with an expended shell which smelled like it had been recently fired. In *Vodak* there was a report of possible gunfire earlier from a similar car. The appellate court stressed the fact that few officers were present (two were present during the stop and arrest and handcuffing of the occupants; two additional arrived either before or after the search, and still two more arrived after the search).

And in *People* v. *Superior Court* (*Rhinehart*) (1980) 114 Cal.App.3d 264 [170 Cal.Rptr. 639] a trunk search of a disabled vehicle was upheld where the suspects were in police custody.

Finally, in *People* v. *Weston, supra,* 114 Cal.App.3d 764 a getaway car was searched four days after a jewelry store robbery. Jewelry was discovered in the passenger section of the vehicle in the recesses of the seats. The court held the fact that the defendant was in custody outside the car and a total of four officers were present did not vitiate the search.

Standing against this considerable body of intermediate appellate opinion is *People* v. *Gott* (1979) 100 Cal.App.3d 1 [160 Cal.Rptr. 307] and the equivocal fact that the California Supreme Court has ordered a hearing on *People* v. *Rodriguez* (Cal.App.) hearing granted June 19, 1980 (Crim. 21522).

The decision in *Gott*, which involved a warrantless trunk search, is based on two factors. The first is that there were six officers surrounding the car, so there was no reason to believe that it would be moved or tampered with while a warrant was obtained. Although it may not be disputed that a number of officers eases the task of securing or impounding a vehicle, it is questionable whether this factor should be a deciding one. If the number of police present is important, why is not the response time of a tow truck to impound it?[3] Or the number and activities of police within reasonable geographic proximity? Or whether the police have a cage car in which they could place the occupant or occupants while they arrange for impoundment? Or whether a "paddy wagon" is available for transportation of the suspects to jail? Is it neces-

---

[3] In *Gott*, unlike our case, the car occupants were validly arrested *prior* to the search. Since impoundment was available to the officers—see footnote 5, *post*—the distinction as to the number of police officers becomes almost irrelevant.

sary to graft onto the search and seizure law one more hairsplitting distinction to be guessed at by police officers or a deputy district attorney aroused from bed to give an off-the-pajama-cuff opinion?

The other basis of the *Gott* decision is *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514] and *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467]. *Minjares* held that a closed container in exclusive police custody may not be opened without a search warrant. *Dalton* held that a warrantless search, made in the field, of closed personal effects found in the trunk of a car, and after the occupants were in custody, was invalid. As stated in *Dalton, supra*, 24 Cal.3d at pages 855-856, "A warrantless search of closed containers found within an automobile involves considerations separate from those involved in a warrantless search of the interior of the automobile,. . ." The court further stated "individuals have a greater privacy interest in the contents of closed luggage than in the interior of an automobile. . . . [¶] [L]uggage, by its nature, may be more easily reduced to the control of police. . . ." (*Id.*, at p. 856.)

There is a great difference between a tote bag (*Minjares*) and two metal boxes (*Dalton*) which "could have been safely transported to the police station" (*People* v. *Dalton, supra*, 24 Cal.3d at p. 857), and a motor vehicle. An automobile is not so easily transported. If an officer does not wish to stand by the several hours required to obtain a warrant, he runs the risk of destruction of evidence by a confederate or vandal unless the car is secured another way. Even if impounded, the contents of a car may not be secure. As noted in *People* v. *Minjares, supra*, 24 Cal.3d 410, 419: ". . . an automobile in police custody may conceivably be moved or broken into,. . ."

We see nothing in *Minjares* or *Dalton* which compels the holding in *Gott*.

Defendant relies on *People* v. *Jochen* (1975) 46 Cal.App.3d 243 [119 Cal.Rptr. 914]. It invalidated a search of a glove compartment after the officer observed a loaded firearm in plain sight. The court held that there was no probable cause or urgency to support the search of the glove compartment, since both occupants of the vehicle were under arrest and there was a substantial number of officers present to maintain police custody of the auto until impounded and removed to a garage and a warrant obtained. It may be inferred, however, that the court

would have seen the case differently had there been probable cause to suspect that a firearm was in the glove compartment, otherwise it would not have been necessary to say, as the court did at page 247: "Although, as an afterthought, the People now seek to support the search of the glove compartment on the theory that the officers, having found one loaded gun, might reasonably suspect that more weapons were in the car, the searching officer testified that he searched the glove compartment only to secure the registration certificate." (Fn. omitted.)

*Odom, Vodak, Rhinehart* and *Weston* are grounded on ample precedent. *People* v. *Laursen* (1972) 8 Cal.3d 192, 201 [104 Cal.Rptr. 425, 501 P.2d 1145], relying on *Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975], held that "when there is probable cause to believe that an automobile stopped on a highway contains contraband, evidence of a crime, ... law enforcement officers need not obtain a warrant before conducting a search since there is no distinction of constitutional proportion between an immediate search on probable cause without a warrant and the automobile's immobilization until one is secured...." (Fn. omitted.) In *Laursen*, one of the suspects had been arrested and the other had escaped from the scene of the crime; yet the court held that the police, upon probable cause, were entitled to search the automobile without a warrant, and furthermore could do so after the vehicle was impounded at a police garage. (*Id.*, at pp. 201-202.)[4] The court's holding implies that exigent circumstances justified the search even though there was no danger that the car would be removed before a warrant was obtained. (Accord, *People* v. *Hill* (1974) 12 Cal.3d 731, 751 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on another point in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Piper* (1980) 103 Cal.App.3d 102, 108 [162 Cal.Rptr. 833]; *People* v. *Remiro* (1979) 89 Cal.App.3d 809, 829-830 [153 Cal.Rptr. 89], cert. den. *sub nom., California* v. *Little* (1979) 444 U.S. 876, 937 [62 L.Ed.2d 104, 197, 100 S.Ct. 160, 288]; *People* v. *Paul* (1978) 78 Cal.App.3d 32, 46-47 [144 Cal.Rptr. 431]; *People* v. *Fraijo, supra*, 78 Cal.App.3d 977, 981.)

As noted above, the California Supreme Court has granted a hearing in *People* v. *Rodriguez* (Cal.App.) [June 19, 1980, Crim. 21522] which involves a search of an automobile trunk. Hearings have also been

---

[4]*People* v. *Minjares, supra*, 24 Cal.3d 410, 421 restricted the so-called "instrumentality" exception to the provision of probable cause; it does not justify a warrantless search.

granted in *People* v. *Superior Court* (*Valdez*) (S.F. 24183) and *Sharp* v. *Superior Court* (L.A. 31279). They may furnish needed clarification in this confusing and murky corner of the law. Absent further direction in this area, we see nothing in the recent pronouncements of the California Supreme Court which leads to a conclusion away from the validity of the search in the instant case.

Nor has such direction come from the Supreme Court of the United States. *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476] held that a locked footlocker seized on probable cause and safely in law enforcement custody could not be searched without a warrant. The high court distinguished automobile searches because of the diminished expectation of privacy which surrounds the automobile. "The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker.... [A] person's expectations of privacy in personal luggage are substantially greater than in an automobile." (*Id.*, at p. 13 [53 L.Ed.2d at p. 549].) The court also noted that luggage is easier to secure while seeking a warrant than is an automobile. (*Id.*, at p. 15 [53 L.Ed.2d at p. 551].)

In *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586], the Supreme Court invalidated the search of a suitcase even though the police had probable cause to believe that it contained marijuana because of a lack of exigent circumstances. The court was explicit in maintaining what it termed the "... *Chadwick* or the *Chambers/Carroll*[5] ... Fourth Amendment line." (442 U.S. at p. 757 [61 L.Ed.2d at p. 240, 99 S.Ct. at p. 2589].) This could only mean that the high court is not retreating from the concept that, because automobiles are inherently mobile making it often impracticable to obtain a warrant, they justify different treatment. "In addition, the configuration, use, and regulation of automobiles often may dilute the reasonable expectation of privacy that exists with respect to differently situated property...." (442 U.S. at p. 761, 61 L.Ed.2d at p. 243, 99 S.Ct. at p. 2591].)

---

[5]The high court has held that, as a general rule, an auto stopped on the highway may be searched without a warrant when police have probable cause to believe it contains contraband or evidence of a crime. (*Carroll* v. *United States* (1925) 267 U.S. 132, 153, 158-159 [69 L.Ed. 543, 554, 45 S.Ct. 280, 39 A.L.R. 790]; *Chambers* v. *Maroney* (1970) 399 U.S. 42, 48-49 [26 L.Ed.2d 419, 427, 90 S.Ct. 1975].) The rationale for such a rule is the car's mobility and the need to either search immediately or seize and hold while a search warrant is sought. An immediate warrantless search is viewed as no

The California Supreme Court in *People* v. *Minjares, supra,* 24 Cal.3d 410, 419, viewed *Chadwick, supra,* 433 U.S. 1, as reaffirming the *Chambers* rule that "once an *automobile* has been seized, a warrantless search is not significantly greater intrusion than immobilization. . . ." (Italics original.)

The courts have restricted exceptions to the requirement of a warrant to a handful of circumstances—all carefully drawn and circumscribed. In delineating them, societal costs of obtaining a warrant, such as danger to officers or risk of loss or destruction of property are the prime considerations. (*Arkansas* v. *Sanders, supra,* 442 U.S. at pp. 759-760, 61 L.Ed.2d at p. 242, 99 S.Ct. at pp. 2590-2591].) Nevertheless, the practical effect on the defendant himself has also been considered. The observation above in *Chambers* was made in the context of inconvenience to the citizen.

From the practical standpoint of an arrested defendant, such as *Gott,* if probable cause exists, a warrantless search of a trunk at the scene of the stop is far superior to an impoundment of the vehicle and search after a warrant is secured. (See fn. 2, *ante.*)

We recognize a defendant may avoid impoundment by consent to a search. Such consent, however, forfeits the right to later claim no probable cause existed for the search, a defense a knowing defendant may not wish to lose.

---

greater intrusion than impoundment; there is no constitutional difference between immobilization of an automobile pending issuance of a search warrant and immediate search.

Impoundment of a motor vehicle involves considerable inconvenience and expense to the owner. A private tow truck is called. (Veh. Code, §§ 22651, subd. (h), 22850; *Penaat* v. *City of San Jose* (1972) 24 Cal.App.3d 707 [101 Cal.Rptr. 258].) It hauls the car off to some secure area. (Veh. Code, § 22850.) Towing charges are never inexpensive, and in remote areas of this state can be substantial. When the defendant is released from jail, he must find transportation to his impounded car, which can be some distance away. Once there, he must pay towing and storage charges for the release of his vehicle or suffer its loss. (Veh. Code, § 22851.) If he cannot come up with the money, the car sits there, accruing additional daily storage charges until sold at a lien sale. (Veh. Code, § 22851; Civ. Code, §§ 3071, 3072.) Only if he can prove that probable cause for storage did not exist, can the automobile owner recover his costs. (Veh. Code, § 22852.) If the arrest was valid, probable cause is established. (Veh. Code, § 22651, subd. (h).)

In the instant case, seizure and immobilization of the Chevrolet was available to the officers; impoundment was not, as there could be no valid arrest prior to the discovery of the pistol. (Veh. Code, § 22651, subd. (h).)

Conceding that the matter is not free of doubt, we find the following facts sufficient to justify the warrantless search of the Chevrolet: the object of the search was an inherently dangerous object—a pistol; the place of the search was not in the trunk of the vehicle but the passenger compartment, more specifically under the very seat occupied by appellant; and the police had reasonable cause to believe that appellant might be armed with a stolen weapon which he could have easily secreted when he observed the patrol car.

■ We go no further than to hold that once a legal stop has been made, if the police have probable cause to believe that a dangerous weapon is secreted in the passenger compartment of a vehicle, the latter's inherent mobility, coupled with the inherent danger of the existence of the weapon, are sufficient exigent circumstances so that a warrantless search is reasonable.

### DENIAL OF THE PENAL CODE SECTION 995 MOTION

■ Defendant argues error on the part of the trial court in refusing to dismiss counts one through four of the information pursuant to his Penal Code section 995 motion below. The issue concerns the validity of a search of a residence.

While Penal Code section 1538.5, subdivision (m), allows appeal from a denial of a section 995 motion, notwithstanding a guilty plea, appellant's section 995 motion was to set aside counts one, two, three and four. He neither pled guilty to, nor was convicted of any of the charges in those counts. They were dismissed in return for his guilty plea to receiving stolen property (a Titan .25 caliber weapon) pertaining to count five.

The matter is analogous to the holding in *People* v. *Punchard* (1980) 103 Cal.App.3d 995 [163 Cal.Rptr. 366].

In *People* v. *Punchard, supra*, 103 Cal.App.3d 995, following an unsuccessful suppression motion, appellant pled guilty to one count of receiving stolen property and two other counts were dismissed. The appellant argued on appeal that the affidavit failed to support the issuance of a search warrant. Since the two counts founded upon allegedly stolen articles recovered through the execution of the search warrant were dismissed, the appellate court reasoned the issue was "moot" stating at page 999: "Defendant forwent the risk of conviction under counts II

and III by pleading guilty to count I. He is presumed to have been aware of the possible defense to counts II and III, and recognized his claim of error in the court's failure to suppress the evidence. Yet he chose to forego the risks of asserting such defense as he may have had. Rather, defendant chose to seek a *certain* dismissal of counts II and III by bargaining away his right to contest count I." (Italics original.)

Similar reasoning holds true in the instant case, since the gun appellant pled guilty to receiving was seized in an auto he was driving as opposed to the residence. Any issues relating to the search of the residence are moot.

The judgment is affirmed.

Brown (G. A.), P. J., and Hanson (P. D.), J., concurred.

A petition for a rehearing was denied May 26, 1981, and the opinion was modified to read as printed above.