[Crim. No. 18712. In Bank. Mar. 3, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL CHAVEZ RIOS, Defendant and Appellant.

## COUNSEL

Kate Whyner, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and David R. Chaffee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Manuel Chavez Rios appeals from a judgment rendered upon his plea of guilty to possession of amphetamines for sale. (Former Health & Saf. Code, § 11911, now § 11378.)[1] Defendant had first entered pleas of not guilty to each of three counts alleging possession of narcotics for sale and had moved pursuant to section 1538.5 for the suppression of physical evidence as to each count. When the motion was denied defendant withdrew his plea of not guilty and pleaded guilty to one of the counts and the other counts were dismissed.[2] Defendant's appeal challenges only the propriety of the trial court's ruling on the motion to suppress. (§ 1538.5, subd. (m).) We conclude that because some of the evidence should have been suppressed the judgment must be reversed without evaluation of the prejudice suffered by defendant because of the erroneous ruling. (*People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1].)

Near midnight on November 30, 1971 Deputy Sheriff Russ Holmes was directed to an altercation in progress near a psychedelic parapherna-

[1]Unless otherwise specified all statutory references are to sections of the Penal Code. References to the Health and Safety Code are to that code as it existed at the times pertinent herein.

[2]Defendant was charged in count I with possession for sale of amphetamine sulfate, in count II with possession for sale of a barbiturate derivative, both possessions being in violation of Health and Safety Code section 11911, and in count III with possession for sale of marijuana in violation of Health and Safety Code section 11530.5. The guilty plea was entered as to count I, and counts II and III were dismissed.

lia business shop operated by defendant. The officer found defendant and others in an alley at the rear of the shop holding a person described by defendant as a burglary suspect. Defendant explained that when he entered his shop he saw three or four persons in the rear thereof and that he had pursued and caught the person being held. Defendant also stated that the burglars were in the process of stacking articles on the floor of the shop when interrupted by him. The officer arrested the suspect and entered the shop with defendant to search for additional suspects and to investigate the burglary.

A partition divided defendant's shop into a front show room and a rear storage and living area, and the rear area had been further partitioned to include a smaller storage space with an eight-foot level overhead on top of which articles had been piled. As Deputy Holmes and petitioner walked from the show room into the rear area the officer saw among the articles on the top of the small storage space a clear plastic bag containing numerous red pills resembling sodium secobarbital. Using a stepladder to climb to the shelf level, he seized and opened the bag, and found approximately 1,000 sodium secobarbital capsules. The deputy was able to observe from his vantage point additional pills and marijuana in an open paper bag which was placed within an open cardboard box. He took possession of the bag, which contained approximately 3 ounces of marijuana and 5,000 amphetamine sulfate tablets. Defendant was then arrested.

Additional officers arrived at the shop. Deputy Holmes commented that they "were probably going to have to search the whole location" and directed the officers in such a search. Large quantities of contraband were discovered during the subsequent warrantless search of the entire premises, including an additional 13,500 amphetamine sulfate tablets.

Defendant contends that all narcotics were seized by the officers contrary to constitutional prohibitions. We agree with defendant as to those narcotics including the 13,500 amphetamine sulfate tablets discovered and seized during the warrantless search following defendant's arrest. The burden is as always on the People to show that contraband seized during a search without a warrant falls within a recognized exception to the warrant requirement if they are to prevail on an attack seeking to suppress the contraband. (*Katz* v. *United States* (1967) 389 U.S. 347, 357-358 [19 L.Ed.2d 576, 585-586, 88 S.Ct. 507]; *Horack* v. *Superior Court* (1970) 3 Cal.3d 720, 729-730 [91 Cal.Rptr. 569, 478 P.2d 1]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1105 [80 Cal.Rptr.

633, 458 P.2d 713].) ▮ The general search of the premises cannot be justified as a search incident to defendant's arrest as the search extended well beyond defendant's person and the area within his immediate control. (*Chimel* v. *California* (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034]; *People* v. *Block* (1971) 6 Cal.3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961].) The People contend, however, that in response to Deputy Holmes' statement that the entire location would have to be searched defendant consented to the extended search and was cooperative in pointing out the hidden contraband.

It appears that although the question of defendant's consent to the search was raised to the court on the motion to suppress, the court declined to make a finding thereon.[3] The claimed consent, if given by defendant, might have been either free and voluntary if defendant had understood Deputy Holmes' statement to mean that no search would be made except with a warrant (see *People* v. *McClure* (1974) 39 Cal.App.3d 64, 69 [113 Cal.Rptr. 815]), or it might have merely constituted a nonvolitional submission to the deputy's stated intention to conduct an immediate warrantless search, if the deputy's remark had been so understood by defendant (see *People* v. *Shelton* (1964) 60 Cal.2d 740, 746 [36 Cal.Rptr. 433, 388 P.2d 665]).

The court indicated that the legality of the search was not dependent upon whether defendant had consented thereto and failed to make any finding relative to that issue, and as it does not appear as a matter of law that consent was freely and voluntarily given, the search cannot be justified on a consensual basis. (*People* v. *Henry* (1967) 65 Cal.2d 842, 846 [56 Cal.Rptr. 485, 423 P.2d 557]; see also *In re Walker* (1974) 10 Cal.3d 764, 780 [112 Cal.Rptr. 177, 518 P.2d 1129]; *People* v. *Kanos* (1969) 70 Cal.2d 381, 385 [74 Cal.Rptr. 902, 450 P.2d 278].) Because the People urge no other exception to the warrant requirement for the search after defendant's arrest they fail in their burden of justifying the warrantless search. The contraband discovered during that search was thus seized in violation of constitutional prohibitions and should have been suppressed.

▮ Defendant further contends that the initial seizure of contraband from the top of the small storage space was constitutionally

---

[3]In ruling on the motion to suppress, the court remarked: ". . . And I don't think it makes any difference whether [defendant pointed out the location] or not. If you disregard that testimony entirely, I still think this search of the premises is part of the arrest. . . . I think the same result follows, because we are not talking about a consent situation. . . ."

impermissible. He relies in the main, however, on his version of events taking place prior to the seizure. Although defendant's testimony raises substantial conflicts with that of the People's witnesses heretofore set out, that conflict was resolved by the court in favor of the People.[4]  ██  A proceeding pursuant to section 1538.5 is one in which factual issues are resolved by the court sitting as a finder of fact. (*People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) "In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence." (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

██  There is substantial evidence that Deputy Holmes entered defendant's shop at defendant's implied invitation for the purpose of investigating a burglary (see *People* v. *Shepherd* (1973) 33 Cal.App.3d 866, 869 [109 Cal.Rptr. 388]); that during the lawful course of such investigation the deputy inadvertently observed contraband in plain view; that he properly positioned himself to retrieve such contraband; and that in doing so he accordingly was able to view additional contraband in the open paper bag which is the basis for the conviction herein.  ██  Neither the observation of contraband in plain view from a position where an officer has a right to be nor the seizure of such contraband is constitutionally prohibited. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33]; *People* v. *Block, supra,* 6 Cal.3d 239, 243.)  ██  Defendant's motion for the suppression of physical evidence was thus properly denied as to the contraband on the top of the storage space, including the 5,000 amphetamine sulfate tablets.

██  It accordingly appears that the trial court properly denied defendant's section 1538.5 motion as to some but not all of the amphetamine sulfate tablets, some 13,500 in number, seized by the officers. When on such a record an accused withdraws a not guilty plea

---

[4]Defendant testified at the hearing that after investigating the burglary the officers left only to return 10 minutes later and demand to search the premises; that he permitted them to enter only after they rejected his demand for a search warrant and advised that they did not need one; that they first represented that they wanted to search for a wallet or other identification which may have been dropped by a suspect in custody; that they represented that a female burglary suspect had informed on defendant because she had been "burned" when defendant sold her some "reds"; and that there was no contraband in plain view.

and enters a guilty plea pursuant to subdivision (m) of section 1538.5, thereby challenging the propriety of the trial court's ruling on appeal, the judgment must in *all cases* be reversed for reasons we enunciated in *People v. Hill, supra,* 12 Cal.3d 731. (See also *People v. Fry* (1969) 271 Cal.App.2d 350, 358-359 [76 Cal.Rptr. 718].) We stated in *Hill*: "In view of the magnitude of the consequences of a guilty plea and the lack of an adequate basis upon which an appellate court can evaluate the impact of a trial court's error, we conclude that the doctrine of harmless error is inapplicable in the context of an appeal under section 1538.5, subdivision (m). The accused must be afforded an opportunity to personally elect whether, contrary to the trial court's ruling, the suppression of certain items of evidence would alter the situation in a sufficiently favorable manner so as to render a plea of not guilty strategically preferable." (*Id.,* at p. 769.)

The evil of an attempt to measure the prejudice which an accused may suffer in the posture of this case derives from the speculation in which the appellate court is compelled to engage in an effort to determine prejudice.[5] In the circumstances here, for instance, had the motion been properly treated, defendant would have been confronted with a charge that he possessed amphetamines grounded on a single seizure of 5,000 pills, rather than on multiple seizures totaling 18,500 pills. Although the evidence *now* before us supports a conviction of possession of the 5,000 pills for sale, we cannot assess the possibilities of defendant's defenses to that single alleged unlawful possession. The suppression hearing afford-

---

[5]In *Hill* we stated the problem in the following language: "The harmless error concept as a basis for according relief in such a setting is clearly inappropriate. There simply is no intelligent means of assessing the impact of a particular erroneous refusal to suppress evidence. Unlike the ordinary post-trial appeal, there is nothing at all in the record to indicate what evidence or defenses the defendant is capable of producing on his own behalf. The strategic considerations which lead an accused to plead guilty pursuant to a plea bargain will frequently hinge not only on the quantum and quality of the prosecution's evidence, but also on the probable effectiveness of the defenses and evidence which the defendant has to counterbalance the incriminating evidence. After the exclusion of certain items of evidence, the prosecution's case may continue to appear invulnerable to an appellate court which necessarily can look only to the strength of competent evidence indicative of the accused's guilt. However, the defendant may have or believe he has means of impeaching, discrediting or casting doubt on such evidence, and the items excluded on appeal might be the very ones which posed the most difficult strategic problems for the defendant. Only the accused and his counsel are aware of what favorable evidence is available to them. We cannot, with any assurance, conclude that an appellate court, which does not have the benefit of that knowledge, can consistently arrive at an accurate assessment of whether the defendant would again plead guilty after knowledge that some but not all of the challenged evidence is to be suppressed. To the contrary, an unacceptable degree of appellate speculation would necessarily inject itself into the application of the harmless error concept in such a context." (*People v. Hill, supra,* 12 Cal.3d 731, 768.)

ed an opportunity to challenge only the propriety of the seizure; defendant has had no opportunity to present unrelated evidence, such as that he lacked knowledge or dominion and control of the 5,000 pills, if there are facts which support such a defense. Because we cannot measure the prejudice suffered by defendant without engaging in impermissible speculation, he is entitled to be restored to the position he would have enjoyed had the court properly ruled on the motion in the first instance.

Defendant is entitled for the foregoing reasons to have the judgment of conviction and the guilty plea set aside. In such event the People may, if they choose, effect a reinstatement of all charges originally contained in the information.[6] In view of the fact, however, that the 5,000 pills would be admissible if defendant is to be retried he should not be foreclosed from an election to be bound by the judgment herein and thus not subject himself to trial on all original counts of the information. (See *People* v. *Hill, supra,* 12 Cal.3d 731, 769.)

The judgment is reversed and the cause remanded to the trial court. That court is directed upon defendant's motion therefor within 30 days of the finality of our decision herein, to vacate the guilty plea, to reinstate all charges contained in the information and proceed to trial or to take other appropriate disposition in accordance with the views expressed herein. Should defendant not so move within the 30-day period, or should defendant duly waive his right to so move, the trial court is further directed to reinstate the judgment.

Tobriner, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.

**CLARK, J.**—For the reasons stated in my concurring and dissenting opinion in *People* v. *Hill* (1974) 12 Cal.3d 731, 770-771 [117 Cal.Rptr. 393, 528 P.2d 1], I continue to dissent from holding the harmless error doctrine inapplicable to an appeal taken from a guilty plea entered following erroneous denial of a motion to suppress evidence. However, in the circumstances of this case, as in *Hill,* prejudice cannot be assessed. Therefore, I concur in the judgment.

McComb, J., concurred.

---

[6]We note that the contraband seized in plain view on the top of the small storage space included both barbiturates and marijuana, possession for sale of which was charged in counts II and III respectively. (See fn. 2, *ante.*) We express no opinion, however, that the items so seized, without the contraband illegally seized in the subsequent warrantless search, would necessarily support the charges of counts II and III.