[Crim. No. 22540. Mar. 10, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND JAMES MILLER, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Carlos Ramirez, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher, Wanda Hill Rouzan and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BIRD, C. J.—This case concerns the applicability of the harmless error doctrine to an appeal pursuant to Penal Code section 1538.5, subdivision (m). The question raised is whether the entire judgment of conviction must be reversed when the erroneously admitted evidence was directly relevant to some, but not all, of the counts to which the accused pled guilty.

I.

In the early morning hours of December 21, 1979, Officer Peter Winston was patrolling a residential neighborhood of Stockton in his marked police cruiser. He had been assigned to investigate a recent series of house burglaries that had occurred in that area. Most of the burglaries involved similar means of entry. The burglar used a pipe wrench to break the lock of the garage door and gain entry to the house.

At approximately 1:30 a.m., Officer Winston saw the taillights of a small car traveling westbound on Stanfield Street. He became suspicious because it was traveling very slowly along the extreme right-hand edge of the road. When the car would come upon another car that was parked parallel to the curb, it would drive around that vehicle and return to the curb line.

Winston followed at a distance of 50 to 70 yards. The headlights of the car were extinguished as the car turned northbound. It traveled another 50 yards and stopped. The officer pulled up behind the car, shined a spotlight on it and turned on his red light to let the driver know that he should not move.

However, after looking back over his shoulder at Winston, the driver made a U-turn with his car. When the officer ordered him to stop, the driver accelerated. Winston quickly followed and turned on his siren. Immediately, the driver pulled his car over to the curb.

Appellant's brother-in-law, Jonathan Sorling, was the driver of the car and appellant was the sole passenger. A consensual search of the car disclosed a loaded handgun under the passenger side of the front seat. Winston also recovered a pair of needle-nose pliers, a screwdriver, a flashlight and a 10-inch pipe wrench. After additional officers arrived, both appellant and Sorling were transported to the police station.

During an interview at the station, Sorling stated that he had seen appellant in possession of a sawed-off shotgun at a certain address. Two police officers accompanied Sorling to that location. There, the officers spoke with Louie Coultres, who told him that he had recently sublet a washroom attached to his apartment to appellant.

Following this encounter, one of the officers prepared an affidavit in support of a search warrant, relating the statements made by Sorling and Coultres. The affidavit did not contain any information pertaining to Sorling's reliability as an informant. A search warrant was issued and executed later that day. In the washroom, the police seized a sawed-off shotgun and numerous other items reported stolen in recent burglaries.

Sometime after these events, appellant was released from police custody. On January 25, 1980, Officer Christopher Bruno was patrolling the Stockton neighborhood in which the "pipe wrench burglaries" had occurred. Bruno knew that appellant was a suspect in the cases and that felony and misdemeanor warrants had been issued for his arrest.[1]

At approximately 3:50 a.m., Officer Bruno observed a 1967 Oldsmobile sedan driving very slowly along West Lane. When the officer looked at the person driving the car, the driver ducked. Bruno followed as the car turned southbound and stopped at a red light. The officer noticed that the taillights of the Oldsmobile were not functioning. He also concluded that appellant was the driver of the car.

After the traffic light turned green, Bruno continued to follow the Oldsmobile. He signaled the car to stop by turning on his overhead red light. However, the Oldsmobile accelerated, drove through a stop sign and made several quick turns. Two other police cruisers joined in the pursuit. Finally, the Oldsmobile was forced to stop when a police cruiser intentionally collided with the car, pushing it into a ditch along the side of the road.

Appellant emerged from the driver's side of the car. A pat-down search revealed a loaded handgun in a holster under appellant's left arm. The police

---

[1]The felony warrant charged appellant with receiving stolen property, while the misdemeanor warrant charged him with a weapons offense.

also seized a flashlight, a screwdriver and a pipe wrench from the right back pocket of appellant's pants. Officer Bruno looked into the car through a closed window and noticed a sawed-off shotgun protruding from under the driver's seat. After obtaining appellant's permission to search the vehicle, the officer also found a hypodermic syringe under the floor mat and a hypodermic needle, spoon and bindle of white powder (later determined to be methamphetamine) in the glove compartment.

Appellant was charged in a 22-count information with 11 counts of second degree burglary (Pen. Code, § 459),[2] 4 counts of being an ex-felon in possession of a firearm (§ 12021), and 1 count each of receiving stolen property (§ 496), unlawful possession of a hypodermic syringe (Bus. & Prof. Code, § 4143), possession of a dangerous drug (Health & Saf. Code, § 11377) and reckless driving (Veh. Code, § 23103).

Pursuant to section 1538.5, appellant moved to suppress the evidence seized by the police from his rented washroom on the ground that the affidavit underlying the search warrant was inadequate. He argued that the affidavit did not contain facts establishing Sorling's reliability as a "noncitizen-informant." After the trial court denied the suppression motion, appellant negotiated a plea bargain agreement with the prosecution.

Under the terms of this bargain, appellant pled guilty to six of the burglary counts (counts 4, 6, 7, 9, 10 and 11). Of the six burglaries only one was directly linked by testimony at the preliminary examination to any of the stolen items recovered from the washroom.[3] Three of the burglaries to which appellant pled guilty had taken place after the date of the washroom search. Appellant also pled guilty to one firearm related offense resulting from the December 21st arrest (count 14) and three firearm related offenses arising from the arrest on January 25, 1980 (counts 17-19). In exchange for these pleas of guilty, the prosecution dismissed the remaining 12 counts of the information.

## II.

The prosecution concedes that the trial court erred in denying appellant's motion to suppress the evidence seized from the rented washroom. ■ Since Sorling was not a "citizen-informant," his reliability had to be established either by a showing that he had given reliable information to the police in the past or by corroboration of his claims of criminal activity. (*People* v. *Smith*

---

[2]All statutory references are to the Penal Code unless otherwise indicated.

[3]Stolen property seized from the washroom was also linked by testimony at the preliminary examination to five of the dismissed burglary counts and four of the dismissed firearm violations.

(1976) 17 Cal.3d 845, 850-854 [132 Cal.Rptr. 397, 553 P.2d 557]; *People* v. *Scoma* (1969) 71 Cal.2d 332, 336-340 [78 Cal.Rptr. 491, 455 P.2d 419]; *People* v. *Schmidt* (1980) 102 Cal.App.3d 172, 178-180 [162 Cal.Rptr. 171].) The affidavit submitted in support of the search warrant was totally silent as to Sorling's reliability. Therefore, it was constitutionally insufficient.

 Thus, the only issue raised by this case is whether the error committed by the trial court requires reversal of the entire judgment of conviction. The state contends that the error should be deemed harmless as to those counts which were "unrelated" to the evidence discovered in the illegal search.[4]

Analysis of the state's contention must begin with this court's decision in *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1]. There, the defendants were charged with murder, robbery and possession of marijuana. They moved to suppress numerous items of evidence discovered in several searches. The trial court denied the section 1538.5 motion in its entirety. Subsequently, the defendants and the prosecution entered into a plea bargain agreement pursuant to which the defendants pled guilty to murder in the second degree. The remaining charges were dismissed.

On appeal, this court upheld the denial of the suppression motion with respect to the bulk of the evidence that the defendants had sought to have suppressed. However, three articles recovered from one of the searches were found to have been illegally seized. (*Id.,* at pp. 763-764.) This court rejected the state's contention that the trial court's erroneous ruling was harmless and held that "the doctrine of harmless error is inapplicable in the context of an appeal under section 1538.5, subdivision (m). The accused must be afforded an opportunity to

---

[4]Section 1538.5, subdivision (m) authorizes an accused who has pled guilty to seek appellate review of the trial court's denial of his motion to suppress evidence. (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896-897 [150 Cal.Rptr. 910, 587 P.2d 706].) The state contended for the first time at oral argument that subdivision (m) does not permit this court to reverse those convictions as to which the illegally seized evidence was irrelevant. Neither the language nor purpose of the statute supports this claim.

In pertinent part, subdivision (m) states, "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty. Such review on appeal may be obtained by the defendant providing that at some stage of the proceedings prior to conviction he has moved for the return of property or the suppression of evidence." The "valuable purpose" served by subdivision (m) is that it allows an accused to preserve his claim of error for appellate review without "the delay and expense of a needless trial." (See *Ramis* v. *Superior Court* (1977) 74 Cal.App.3d 325, 332-333 [141 Cal.Rptr. 374].)

Thus, subdivision (m) merely confers jurisdiction on an appellate court to review a trial court's denial of a motion to suppress evidence in a case in which the accused has pled guilty. The provision does not purport to limit the appellate court's authority to determine which convictions must be set aside upon a finding that the challenged evidence was improperly admitted by the trial court.

personally elect whether, contrary to the trial court's ruling, the suppression of certain items of evidence would alter the situation in a sufficiently favorable manner so as to render a plea of not guilty strategically preferable." (*Id.*, at p. 769, fn. omitted.) Accordingly, the judgments of conviction were reversed. The trial court was directed to vacate the guilty plea of any defendant who so requested and to reinstate all the original charges upon the motion of the prosecution. (*Id.*, at pp. 769-770.)

There were two bases for the holding in *Hill* that the harmless error doctrine was inapplicable. The first was "the magnitude of the consequences of a guilty plea." (*Id.*, at p. 769.) The court explained that an accused's plea of guilty involves the waiver of "several of [the] most fundamental constitutional rights" and may have extreme consequences, "including the loss of one's liberty . . . . Consequently, only the most compelling reasons can justify any interference, however slight, with an accused's prerogative to *personally* decide whether to stand trial or waive his rights by pleading guilty." (*Id.*, at pp. 767-768.) Implicit in this reasoning was the notion that in making a decision as critical as whether or not to plead guilty to the charged offenses, an accused must not be encumbered by an erroneous ruling on his motion to suppress evidence.

The second justification for the holding in *Hill* was the "lack of an adequate basis" for evaluating the impact of a trial court's error on a defendant's decision to plead guilty. (*Id.*, at p. 769.) This court reasoned that when an appellate court determines that the trial court erroneously refused to suppress evidence, "the situation is altered, no matter how slightly, from that which existed prior to the plea of guilty." (*Id.*, at p. 768.) The harmless error concept is inappropriate because "[t]here simply is no intelligent means of assessing the impact of a particular erroneous refusal to suppress evidence." (*Ibid.*)

A strategic decision to enter into a particular plea bargain hinges not only on the strength of the prosecution's case, but also upon the probable effectiveness of the defenses and exculpatory evidence available to the accused. (*Ibid.*) However, these matters normally cannot be determined from the record when no trial has taken place. Therefore, the *Hill* court recognized that "[a]fter the exclusion of certain items of evidence, the prosecution's case may continue to appear invulnerable to an appellate court . . . . [Yet], the defendant may have or believe he has means of impeaching, discrediting or casting doubt on such evidence, and the items excluded on appeal might be the very ones which posed the most difficult strategic problems for the defendant. Only the accused and his counsel are aware of what favorable evidence is available to them." (*Ibid.*)

Given these circumstances, this court concluded in *Hill* that an appellate tribunal could not "consistently arrive at an accurate assessment of whether the defendant would again plead guilty after knowledge that some but not all of the

challenged evidence is to be suppressed. To the contrary, an unacceptable degree of appellate speculation would necessarily inject itself into the application of the harmless error concept in such a context." (*Ibid.*, fn. omitted.)

*Hill*'s holding that the harmless error concept is inapplicable to an appeal under section 1538.5, subdivision (m) was reiterated in *People v. Rios* (1976) 16 Cal.3d 351 [128 Cal.Rptr. 5, 546 P.2d 293]. In that case, the defendant was charged with three counts of possessing controlled substances for sale. After his motion to suppress evidence was denied by the trial court, he entered a plea of guilty to one of the counts. The other two charges were dismissed.

On appeal, this court ruled that the trial court had erred in refusing to suppress some of the narcotics discovered by the police in the warrantless search of the defendant's business. (*Id.*, at p. 358.)[5] This error required automatic reversal of the judgment. "When on such a record an accused withdraws a not guilty plea and enters a guilty plea pursuant to subdivision (m) of section 1538.5, thereby challenging the propriety of the trial court's ruling on appeal, the judgment in *all cases* must be reversed for reasons we enunciated in *People v. Hill, supra,* 12 Cal.3d 731." (*Id.*, at pp. 357-358.)

The court further explained, "[t]he evil of an attempt to measure the prejudice which an accused may suffer in the posture of this case derives from the speculation in which the appellate court is compelled to engage in an effort to determine prejudice. . . . Because we cannot measure the prejudice suffered by defendant without engaging in impermissible speculation, he is entitled to be restored to the position he would have enjoyed had the court properly ruled on the motion in the first instance." (*Id.*, at pp. 358-359.)

Other jurisdictions are in accord with *Hill* and *Rios*. (See, e.g., *United States v. Weber* (1st Cir. 1981) 668 F.2d 552, 562 [citing to *Hill* as a "well-considered" opinion]; *Jones v. State of Wis.* (7th Cir. 1977) 562 F.2d 440, 445-446 [citing to *Hill* in support of its holding reversing a guilty plea entered following an erroneously admitted in-court identification].)

The New York Court of Appeal has analyzed this issue well. In *People v. Grant* (1978) 45 N.Y.2d 366 [408 N.Y.S.2d 429, 380 N.E.2d 257, 264], that court pointed out that when a conviction is based on a plea, rather than a verdict, the question that must be asked is "whether there is a reasonable possibili-

---

[5]In *Rios,* the defendant invited the police into his shop to investigate a burglary. One officer observed in plain view 3 ounces of marijuana, 1,000 sodium secobarbital capsules and 5,000 amphetamine sulfate tablets. This court held that the seizure of these drugs was proper. However, the subsequent seizure of an additional 13,500 amphetamine sulfate tables during a warrantless search of the premises following the defendant's arrest was found to be illegal. (*Ibid.*)

ty that the [trial court's] error contributed to the plea . . . ." However, "[u]nlike a verdict, which must necessarily be based exclusively on the evidence submitted at trial, a defendant's decision to plead guilty may be based on any factor inside or outside the record. . . . [A] conviction based on a plea of guilty simply reflects the fact that for some reason, sufficient to the defendant, he decided to waive his trial rights. [Citation omitted.]" (*Ibid.*)

Nevertheless, the state argues that the harmless error doctrine should apply in this case. It is contended that *Hill* and *Rios* are distinguishable because in those cases the tainted evidence was relevant to all of the counts to which the defendants pled guilty. By contrast, some of the counts to which appellant pled guilty were not connected to evidence erroneously admitted by the trial court.

However, this is a distinction without a difference. The disposition of the "unrelated" counts was not independent from that of the "related" charges. Appellant and the prosecution entered into one plea bargain agreement which resolved all twenty-two counts of the information. The bargaining positions of the parties were determined, in part, by the aggregate strength of all the incriminating evidence accumulated by the state. Appellant undoubtedly negotiated for what he believed was the best disposition that he could obtain given the trial court's denial of his suppression motion. This objective may well have led him to plead guilty to "untainted" as well as "tainted" counts. As in *Hill*, the denial of the motion to suppress evidence may have influenced appellant's decision to agree to the negotiated plea bargain.

Indeed, the record does not indicate that any other factors motivated appellant to enter his guilty pleas. Nor does it disclose what defenses or evidence appellant was capable of producing on his behalf. In addition, suppressing the challenged evidence alters the bargaining positions of the parties from that which existed prior to negotiation of the agreement. The prosecution's case against appellant is weakened and some of the counts may have to be dismissed.[6] For these reasons as well, this court is unable to conclude that appellant would have agreed to any of the same guilty pleas absent the trial court's erroneous ruling on the suppression motion.

The state relies on *People* v. *Punchard* (1980) 103 Cal.App.3d 995 [163 Cal.Rptr. 366] to support its contention that the harmless error rule should be

---

[6]The prosecution's case is weakened with respect to both the "tainted" and "untainted" counts. Obtaining convictions on the "tainted" charges becomes more difficult because evidence directly probative of appellant's guilt is now inadmissible.

Suppressing the evidence also has an effect on the trial of the "untainted" offenses. Generally, a jury is more apt to convict an accused of charged offenses if it believes that he has committed other crimes. (See Witkin, Cal. Evidence (2d ed. 1966) Circumstantial Evidence, § 340, p. 299.) Here, if absent the inadmissible evidence the prosecution cannot prove at trial that appellant is guilty of the "tainted" offenses, the jury may be less likely to believe that appellant had the criminal propensity to commit the "untainted" counts.

applied here. After the trial court erroneously failed to suppress evidence in *Punchard,* the defendant pled guilty to one count of receiving stolen property. In accordance with the terms of the plea bargain, two other counts of receiving stolen property were dismissed.

The Court of Appeal affirmed the judgment of conviction, holding that the items found during the illegal search were only relevant to the dismissed counts. (*Id.,* at pp. 998-999.) In *Punchard,* the court asserted that the "defendant pled guilty to a count to which there appears no conceivable defense and to which the error in failing to suppress had no connection and no effect." (*Ibid.,* fn. omitted.)

This reasoning is flawed in two significant respects. First, *Punchard*'s conclusory assertion that the defendant had "no conceivable defense" flies in the face of *Hill*'s recognition that an appellate court is unable to determine from a blank record what defenses and evidence were available to an accused. Secondly, the Court of Appeal's assumption that the trial court's error had "no effect" on the defendant's decision to plead guilty to the unrelated count ignores the fact that the guilty plea was entered as part of an agreement involving all of the counts of the information. As explained above, the defendant's decision to agree to that particular bargain may well have been affected by the cumulative strength of the prosecution's evidence on all the charges. (See *ante,* at pp. 552-553.) *Punchard* is inconsistent with the rationale of *Hill, Rios* and this opinion, and, therefore, is disapproved.[7]

Not only is the harmless error rule proposed by the state inappropriate under the rationale of *Hill* and *Rios,* but it is also not practical. An appellate court will not usually be able to confidently determine from the record even the seemingly simple matter of whether or not a connection exists between the counts to which the accused pled guilty and the erroneously admitted evidence.

---

[7]The state also claims that footnote 36 of the *Hill* opinion suggests that *Hill* is not controlling in the present case. In that footnote, the court observed that "[t]here is no basis whatsoever for concluding that the items which we hold to be inadmissible are in fact unconnected to the murder or would be irrelevant to the prosecution's case against defendants. Indeed, the opposite conclusion seems unavoidable."

Several factors indicate that the state is reading too much into this statement. The footnote appears to have been written solely for the purpose of rebutting the dissent's assertion that the court could not determine from the appellate record whether the erroneously admitted evidence was "extremely incriminating." (*Id.,* at p. 771 (conc. and dis. opn. of Clark, J.).)

In addition, the question of whether the harmless error rule would have applied had the tainted evidence been relevant only to the dismissed charges was obviously not before the *Hill* court. The opinion did not resolve that issue. Finally, given *Hill*'s emphasis on the inability of an appellate tribunal to determine from a blank record what factors motivated an accused to plead guilty, it is improbable that *Hill* intended to exempt from its ruling cases like the present one. These factors undermine the state's reliance on footnote 36.

Consider count 4 of the present case as an example. This count involved a burglary occurring seven days before the search of the washroom. At the preliminary examination, the victim testified that his house had been ransacked and that jewelry had been stolen. The schedule of evidence seized from the washroom contained a listing for jewelry. The prosecution did not ask the victim whether this jewelry found by the police was taken during the burglary.[8] Nor were any other burglary victims asked to identify the jewelry.

What additional evidence the prosecution would have introduced had appellant's case proceeded to trial is beyond this court's knowledge. The prosecution had no obligation to present its entire case against appellant at the preliminary examination. At a trial, the prosecution may well have elicited testimony from the victim linking the seized jewelry to the burglary of her house. Thus, even under the harmless error rule proposed by the state, it would be impossible to determine whether or not appellant's plea of guilty to count 4 was prejudiced by the tainted evidence.[9]

Finally, what the state fails to recognize is that a disposition reversing the entire judgment and returning the parties to the status quo is fair to the prosecution, as well as the accused. As this court has explained, "the concept of reciprocal benefits" is critical to the plea bargaining process. (*People* v. *Collins* (1978) 21 Cal.3d 208, 214 [145 Cal.Rptr. 686, 577 P.2d 1026].) "The state, in entering a plea bargain, generally contemplates a certain ultimate result . . . ." (*Id.,* at p. 215.) The state may be seeking to have the accused subjected to a certain prison term or a particular number of convictions.[10]

---

[8]Probable cause to hold appellant to answer for this burglary was based on a police officer's testimony that appellant's fingerprints were lifted from the burglary scene.

[9]The same is true with respect to appellant's plea of guilty to count 6. This burglary was committed four days before the search of the washroom. At the preliminary examination, the victim testified that she returned home to find her house ransacked. However, the prosecution did not ask whether any of the property recovered from appellant's washroom had been stolen from her home. Since not all of the items listed in the schedule of seized evidence were accounted for by the other burglary victims, the possibility may not be discounted that at a trial, the prosecution would have connected some tainted evidence to count 6.

In addition, even the disposition of the counts involving burglaries occurring after the date of the search may have been prejudiced by the illegally seized evidence. Almost all of the burglaries that appellant was charged with committing occurred in the same residential neighborhood and involved similar means of entry.

Consequently, the prosecution's use of the illegally seized property to bolster its case with respect to the "contaminated" burglary counts was likely to make conviction of the "untainted" counts easier. Once the jury believed that appellant had committed the "tainted" burglaries, it would have been more apt to find appellant guilty of the other counts because of the similarities involved.

[10]For example, the record in the present case indicates that the prosecution's objective in agreeing to the plea bargain was to ensure that appellant served a six-year prison term.

If the harmless error rule suggested by the state were adopted, the "related" counts to which the accused pled guilty would be reversed and the "unrelated" counts affirmed. This disposition would deprive the prosecution of the benefit of its bargain, while keeping the state bound to the dismissals won by the accused. By contrast, a disposition reversing the entire judgment and returning the parties to the status quo would provide the prosecution with the option of either renegotiating for a result similar to the one originally sought or going to trial on all the counts.

### III.

To apply a harmless error rule in this case would require this court to engage in the same type of speculation found to be impermissible in *Hill* and *Rios*. Therefore, appellant is entitled to have the judgment of conviction vacated and the pleas of guilty set aside. If appellant so elects, the state may reinstate all the original charges contained in the information. (See *People* v. *Hill, supra,* 12 Cal.3d at p. 769.) However, as in *Hill,* appellant is "not . . . foreclosed from . . . elect[ing] to be bound by the judgment[ ] and . . . not subject[ing] [himself] to trial on the original charges." (*Ibid.*)

The judgment is reversed and the cause remanded to the superior court. That court is directed to vacate the guilty pleas if appellant makes an appropriate motion within 30 days after this opinion becomes final. In that event, the court should reinstate the original charges contained in the information, if the state so moves, and proceed to trial or make other appropriate dispositions in accordance with the views expressed in this opinion. If no such motion is filed by appellant, the trial court is directed to reinstate the original judgment.

Kaus, J., Broussard, J., Zenovich, J.,* and Woolpert, (W. R.), J.,* concurred.

**KAUS, J.**—I concur in and have signed the Chief Justice's opinion which, I believe, is foreordained by *People* v. *Hill* (1974) 12 Cal.3d 731, 767-769 [117 Cal.Rptr. 393, 528 P.2d 1]. In the past, *Hill* has led to some logically correct, but practically rather bizarre, reversals. (E.g., *People* v. *Rios* (1976) 16 Cal.3d 351 [128 Cal.Rptr. 5, 546 P.2d 293] [5,000 tablets legally seized, 13,500 taken illegally; plea to *one* count of possession for sale reversed].) The problem is, of course, that a guilty plea followed by a successful appeal under section 1538.5, subdivision (m) of the Penal Code does not permit an appellate assessment of prejudice.

---

*Assigned by the Chairperson of the Judicial Council.

Pending a legislative solution, it occurs to me that one way for a prosecutor to avoid unnecessary reversals is to stipulate, before the plea bargain is entered into, that certain evidence, the seizure of which may not be upheld on appeal, will not be used if the case were to go to trial. It is only a guess, of course, but a pretty safe one that if in the case at bar there had been a stipulation that the items seized in the washroom would not be offered at the trial—and the counts dependent on them dismissed—there would still have been a plea bargain to a number of counts and that the punishment meted out to defendant would not have been materially different.

I may, of course, be suggesting something which is already routinely taking place in our trial courts. If so, I apologize.

**RICHARDSON, J.**—I respectfully dissent. In my view, defendant, having pleaded guilty to several counts which are wholly unrelated to those counts which are "tainted" by an erroneous suppression ruling, should not be permitted to withdraw his pleas to the former counts merely because he appealed successfully from convictions on the latter counts.

Although the People have conceded that the evidence obtained during the search of the washroom should have been ordered suppressed, most of the charges to which defendant pleaded guilty were not based, either in whole or in part, upon that evidence. Indeed, the record indicates that only one undismissed burglary charge was based upon evidence which was discovered in the course of, or as a result of, the illegal search. The important issue before us is whether, under such circumstances, defendant is entitled to a reversal of his conviction as to *all* counts, and an opportunity to withdraw his guilty pleas to those counts.

Defendant's right to appellate review of the convictions entered upon his pleas of guilty is necessarily based upon subdivision (m) of section 1538.5 of the Penal Code. As we recently acknowledged, "Subdivision (m) constitutes an exception to the rule that all errors arising prior to entry of a guilty plea are waived, except those which question the jurisdiction or legality of the proceedings. [Citations.]" (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 897 [150 Cal.Rptr. 910, 587 P.2d 706]; see Pen. Code, § 1237.5.) In pertinent part, subdivision (m) provides that "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty. Such review on appeal may be obtained by the defendant providing that at some stage of the proceedings prior to conviction he has moved for the return of property or the suppression of the evidence."

In light of the foregoing statutory prerequisite of a prior motion to suppress evidence or return property, it seems apparent to me that authorization of

review under subdivision (m) extends only to those charges which were based upon an assertedly unlawful search or seizure. Reasonably construed, subdivision (m) does not suspend the finality of *all* guilty pleas entered by a defendant in a multicount proceeding, but only those pleas to charges which have been previously challenged by a motion to suppress.

Defendant asserts that because his guilty pleas were part of a plea bargain, he should be permitted to withdraw all those pleas, including the ones relating to those counts which are wholly "untainted" by any illegally obtained evidence. Subdivision (m) does not create any such right, however, and the applicable cases have allowed a withdrawal of guilty pleas only if the pleas related to charges previously challenged by a suppression motion.

Thus, in *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1], defendants had pleaded guilty to first degree murder pursuant to a plea bargain in which certain other charges were dismissed. Defendants appealed from the judgments of conviction, alleging that the trial court erred in denying their motions to suppress evidence. We held that although the "bulk" of the evidence was lawfully seized and was properly admissible, at least some of the evidence should have been ordered suppressed. (P. 767.) Accordingly, we ruled that defendants were entitled to elect whether, "the suppression of certain items of evidence would alter the situation in a sufficiently favorable manner so as to render a plea of not guilty strategically preferable." (P. 769, fn. omitted.)

All of the evidence at issue in *Hill* related to the charges to which defendants pleaded guilty, and nothing we said in *Hill* suggests that defendants would have been permitted to withdraw their pleas to any unrelated charges. Indeed, we specifically observed in *Hill* that "There is no basis whatsoever for concluding that the items which we hold to be inadmissible are in fact unconnected to the murder or would be irrelevant to the prosecution's case against defendants . . . . [T]he inference seems inescapable that such items . . . tend to incriminate defendants and therefore are 'connected' to the murder. To conclude otherwise is to engage in unfounded speculation at the expense of defendants." (P. 767, fn. 36.) Thus, *Hill* clearly stands for the proposition that if, on appeal, it is determined that a defendant's motion to suppress should have been granted at least in part, defendant will be permitted to withdraw his guilty plea with respect to any charges to which such evidence relates. (See also *People* v. *Rios* (1976) 16 Cal.3d 351, 357-359 [128 Cal.Rptr. 5, 546 P.2d 293] [unlawfully obtained evidence related to count on which guilty plea entered]; *People* v. *Salazar* (1979) 93 Cal.App.3d 912, 915-916 [156 Cal.Rptr. 125].)

Subsequent cases have uniformly recognized the requirement of some nexus between the unlawfully obtained evidence and the charge on which the guilty plea was based. (*People* v. *Martinez* (1981) 118 Cal.App.3d 624, 635-636 [173

Cal.Rptr. 554] [evidence related to dismissed counts]; *People* v. *Nagdeman* (1980) 110 Cal.App.3d 404, 412 [168 Cal.Rptr. 16] [evidence related to uncharged offenses]; *People* v. *Punchard* (1980) 103 Cal.App.3d 995, 999 [163 Cal.Rptr. 366] [evidence related to dismissed counts].)

*Punchard, supra,* is particularly instructive. There, as part of a plea bargain, the defendant pleaded guilty to one count of receiving stolen property; two other receiving counts were dismissed. Defendant had previously moved to suppress certain evidence connected to the *dismissed* counts and, on appeal from the conviction following his guilty plea, he contended that the foregoing evidence should have been ordered suppressed. The court held that the admissibility issue was rendered "moot" by reason of the dismissal of the counts to which the evidence in question related. (Pp. 998-1000.) As the court explained: "Defendant forwent the risk of conviction under counts II and III by pleading guilty to count I. He is presumed to have been aware of the possible defense to counts II and III, and recognized his claim of error in the court's failure to suppress the evidence. Yet he chose to forego the risks of asserting such defense as he may have had. Rather, defendant chose to seek a *certain* dismissal of counts II and III by bargaining away his right to contest count I.

"Nor is the matter one of pure gamesmanship; defendant was thoroughly apprised that in bargaining away his right to contest count I, he was unequivocably [*sic*] admitting that he did in fact commit the crime charged.

"He cannot now reasonably challenge the validity of his bargain and his plea by pointing to the possible defenses he might have asserted as to the dismissed counts. Defendant knowingly and willingly forwent such defense[s] and cannot raise them now." (Pp. 999-1000, italics in original.)

Although *Punchard* does not discuss the point, its holding could be equally sustained on the alternative basis that, as discussed above, Penal Code section 1538.5, subdivision (m), does not authorize appellate review following a guilty plea to charges which were not challenged by a prior motion to suppress evidence. Those pleas are final and unreviewable.

It is argued that had defendant known at the time of his plea bargain the ultimate merit of his earlier motion to suppress, he might not have entered into that bargain or pleaded guilty to the various offenses, and that accordingly he should now be permitted to withdraw his pleas in toto. *Every* plea bargain, however, requires a careful weighing of the various tactical considerations, including possibly meritorious defenses which might have been asserted at trial or on appeal. As *Punchard, supra,* explains, the defendant in such a situation cannot claim any surprise or ignorance of the facts. Moreover, as we have seen, the Legislature has chosen to restrict appellate review of convictions

based upon guilty pleas to those charges to which a prior motion to suppress was directed.

Thus, I would reverse the judgment in part and direct the trial court on remand to permit defendant to withdraw his guilty pleas to any offense or offenses to which his prior motion to suppress was related. Because the People have not requested reinstatement of any charges which were dismissed as part of the plea bargain, I would not reach the question whether such reinstatement would be proper upon partial rescission of a plea bargain. (See *People* v. *Hill, supra,* 12 Cal.3d 731, 769.)

Mosk, J., concurred.