[No. H000906. Sixth Dist. June 6, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
LEON EUGENE WILKINS, Defendant and Appellant.

**COUNSEL**

Michael A. Kresser, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert Granucci, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BRAUER, J.**—Leon Eugene Wilkins appeals from a judgment of conviction entered upon a negotiated plea of guilty to a charge of unauthorized possession of PCP (Health & Saf. Code, § 11377). His plea followed the denial of his motion to suppress evidence and he now challenges the trial court's adverse ruling. (Pen. Code, § 1538.5, subd. (m).) He contends that he was unlawfully detained and, therefore, the subsequent search and seizure conducted pursuant to a probation search condition was illegal. We conclude his contention is meritorious.

Review of the record under the proper standard of review (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-598 [174 Cal.Rptr. 867, 629 P.2d 961]) shows the following facts. San Jose police officer Geoffrey Sun was alone on routine patrol at approximately 10:18 p.m. on January 4, 1985. While driving a marked patrol vehicle through the parking lot of a convenience market, he noticed that two occupants in the front seat of a parked Pontiac station wagon ". . . seemed to lower themselves to conceal themselves in a crouched down position . . ." as he drove past. This sliding down motion is the only movement he saw inside the car. He was aware that the market's neighborhood was ". . . noted for thefts of the stores and narcotics activities . . . ."

He drove through the parking lot again with the intent to make contact with the passenger and the driver in the car ". . . just to find out what they were doing in the particular area." He parked diagonally behind the station wagon so that he was ". . . essentially blocking that exit of the station wagon."

The officer got out of the patrol vehicle and approached the driver's side of the station wagon. He ". . . smelled a strong odor of burning incense" upon leaning down to the driver's door. He was aware that incense is sometimes used to conceal the odor of burning contraband.

When Officer Sun asked the individual in the driver's seat what he was doing in the area, he replied ". . . just kicking back." Defendant Wilkins, who was seated on the passenger's side, gave a similar response. The officer then requested identification from both men, who complied. He ran a warrant check on each and learned, when a response came approximately one minute later, that Wilkins was subject to a probation search condition. He confirmed its continuing validity through radio communications. The search term permitted a search of Wilkins's residence, vehicle, and person.

Officer Sun proceeded to perform a full search of Wilkins's clothing. The first item discovered was a hand rolled cigarette in a matchbook in his right

front coat pocket. The officer believed the substance contained in the cigarette was marijuana because of its green color. At the preliminary examination hearing, the party stipulated that the cigarette contained PCP.

The officer next uncovered a sealed zip lock baggie with a white powdery substance in Wilkins's right front pants pocket. At the time, he suspected it was a controlled substance, but it proved to be otherwise.

The officer searched the other man and then commenced a search of the car. He ". . . discovered a clear cellophane type wrapper containing . . . an off white colored rock like substance" on the right edge of the right front door panel. The officer seized the suspected contraband, which the parties stipulated at the preliminary examination was PCP. Lastly, the officer found a full container of Schillings parsley inside the unlocked glove compartment.

Wilkins and the other occupant were both arrested for possession of controlled substances. When advised of his *Miranda* rights at the pre-processing center, Wilkins agreed to speak with the officer. When asked about the contraband discovered in the front seat, Wilkins said he "stashed it" and "purchased it out of the City of San Jose."

Relying on *People* v. *Rios* (1975) 51 Cal.App.3d 1008 [124 Cal.Rptr. 737], the trial court concluded that the initial detention, blocking the exit of the station wagon, was lawful because Wilkins and his co-occupant slid down in their seats "as if to elude observation." The court then determined the subsequent detention was valid because "the officer almost immediately smelled incense burning and reasonably suspected that defendant and his companion were 'burning contraband' . . . ."

Wilkins argues that the immobilization of the vehicle constituted an unlawful detention because it was not supported by reasonable suspicion of criminal activity and the evidence subsequently seized was its "tainted fruit." The People contend that either (1) the act of positioning the patrol car behind the parked vehicle in a manner preventing egress was not a detention or (2) if it was, it was based upon reasonable suspicion.

■ It is well established that certain temporary seizures short of arrest based upon probable cause are justifiable under the Fourth Amendment where the officer subjectively has a reasonable and articulable suspicion based upon objective facts that the person to be detained is involved in crime which has occurred, is occurring, or is about to occur. (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957]; *United States* v. *Place* (1983) 462 U.S. 696, 702 [77 L.Ed.2d 110, 117-118, 103

S.Ct. 2637].) "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 19, fn. 16 [20 L.Ed.2d 889, 905, 88 S.Ct. 1868].) "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." (*Id.,* at p. 16 [20 L.Ed.2d at p. 903].) A person has been "seized" within the meaning of the Fourth Amendment when, in view of all of the surrounding circumstances, a reasonable person would have believed that he was not free to leave. (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870]; see *Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 790 [195 Cal.Rptr. 671, 670 P.2d 325].)

Here, the occupants of the station wagon were "seized" when Officer Sun stopped his marked patrol vehicle behind the parked station wagon in such a way that the exit of the parked vehicle was prevented. Under these circumstances, a reasonable person would have believed that he was not free to leave. (Cf. *People* v. *Bailey* (1985) 176 Cal.App.3d 402 [222 Cal.Rptr. 235] (detention occurred where officer in unmarked police car pulled in behind a vehicle in a Sears parking lot and turned on emergency lights).)

■ The state bears the burden of justifying a detention, as with all warrantless intrusions. (*People* v. *Bower* (1979) 24 Cal.3d 638, 644 [156 Cal.Rptr. 856, 597 P.2d 115].) ■ "In order to justify a detention 'the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation] to suspect the same criminal activity and same involvement by the person in question.' [Citations.]" (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 478 [198 Cal.Rptr. 538, 674 P.2d 240].) "[A]n investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]" (*In re Tony C., supra,* 21 Cal.3d at p. 893; cf. *People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].)

In the instant case, the trial court relied exclusively upon *People* v. *Rios, supra,* 51 Cal.App.3d 1008, a case predating landmark Supreme Court opinions. In *People* v. *Rios,* two officers on patrol in a high crime area in their marked patrol car observed the defendant and another man sitting in

an automobile legally parked at a curb. The occupants ducked down out of sight when the patrol car flashed its headlights across the vehicle. When the officers centered their spotlight on the parked car, the two occupants returned to normal sitting positions. Suspecting a robbery or burglary might be impending, the officers stopped their vehicle and approached the parked car to question the occupants. The officer spoke with the men. (*People* v. *Rios, supra,* 51 Cal.App.3d at p. 1010.) Looking into the car with the aid of a flashlight, the officer observed a portion of a handgun protruding from under the front seat. The weapon was seized and both men were arrested. (*Id.*, at p. 1011.)

The *Rios* court, in a cursory opinion which assumed a detention, held the "detention" was proper because the circumstances were ". . . sufficient to cause a 'good faith suspicion' of criminal activity. . . ." This case is of dubious validity in light of *People* v. *Aldridge, supra, People* v. *Bower, supra,* and *In re Tony C., supra.*

In *People* v. *Aldridge, supra,* 35 Cal.3d 473, a patrolling officer regularly conducted field interviews of persons in a particular liquor store parking lot because it was known for drug traffic and people who frequented the location were often armed. The officer personally had made two hundred arrests in the area. On the evening in question, the officer and his partner drove their marked patrol car into the lot. He was aware that three narcotics arrests had occurred in the parking lot only hours earlier and believed some of the persons congregating there might possess illegal drugs or weapons. The group assembled began to disperse and four men, including defendant Aldridge, first walked then ran away from the parking lot and across an avenue. Another officer, situated on the other side of the roadway, stopped and searched them for weapons, finding a loaded stolen gun on Aldridge.

Our Supreme Court reversed the trial court's denial of the motion to suppress. It held three objective factors considered by police, namely (1) the time of night, (2) the notoriety of the area for drug transactions, and (3) defendant's conduct to avoid police contact, did not create a reasonable suspicion of criminality sufficient to justify a detention, whether those facts were considered separately or cumulatively. (*Supra,* 35 Cal.3d at p. 478.)

First, the Court observed that being in the area of a liquor store at 10:15 p.m. was not unusual or suspicious. (*Id.*) The Court had earlier stated: "Strictly speaking, the 'night-time factor' [footnote omitted] is not 'activity' by a citizen, and this court has warned that this factor 'should be appraised with caution' [citation] and that it has, at most, 'minimal importance' in evaluating the propriety of an intrusion [citation]." (*People* v. *Bower, supra,* 24 Cal.3d at p. 645.)

Second, the Court reaffirmed that invasion of a person's privacy is not justified merely because they are in a "high crime area." (*People* v. *Aldridge, supra,* 35 Cal.3d at p. 478; cf. *People* v. *Bower, supra,* 24 Cal.3d at p. 645; *In re Tony C., supra,* 21 Cal.3d at p. 897.) Finally, it indicated conduct to avoid a police officer is not a factor creating reasonable suspicion absent additional objective factors other than those already discussed. (*People* v. *Aldridge, supra,* at p. 479; see *People* v. *Bower, supra,* 24 Cal.3d at pp. 647-648.)

■ The factors in this case are virtually identical with those rejected in *Aldridge*. Respondent attempts to distinguish the circumstances here on the ground that Officer Sun did not conduct regular field interviews at the convenience market and, therefore, Wilkins would not have been seeking to avoid such harassment. This is a distinction without a difference. While in *Aldridge* the Supreme Court recognized that under different circumstances ". . . flight might imply a consciousness of guilt, and combined with other objective factors could justify an investigative stop" (*People* v. *Aldridge, supra,* 35 Cal.3d at p. 479), here there are no objective factors in addition to the police avoidance behavior, the reputation of the area for crime, and time of night, sufficient to cause a reasonable suspicion of criminality. Therefore, the detention was illegal.

■ The exclusionary rule prevents introduction of evidence obtained as the indirect product of an unconstitutional search or seizure, often referred to as "fruit of the poisonous tree." (*Segura* v. *United States* (1984) 468 U.S. 796, 804 [82 L.Ed.2d 599, 608, 104 S.Ct. 3380].) ■ Where the fact of an illegal detention has been established, defendant bears the burden of going forward with specific evidence demonstrating a prima facie causal link between the primary illegality and secondary evidence allegedly tainted as a result. (See *People* v. *Coleman* (1975) 13 Cal.3d 867, 890, fn. 20 [120 Cal.Rptr. 384, 533 P.2d 1024]; *Alderman* v. *United States* (1969) 394 U.S. 165, 183 [22 L.Ed.2d 176, 192-193, 89 S.Ct. 961].) However, the ultimate burden of persuasion to show the evidence is admissible rests with the prosecution. (*People* v. *Coleman, supra,* 13 Cal.3d at p. 891, fn. 20; cf. *Alderman* v. *United States, supra,* 394 U.S. at p. 183 [22 L.Ed.2d at pp. 192-193]; *Nix* v. *Williams* (1984) 467 U.S. 431, 444 [81 L.Ed.2d 377, 387-388, 104 S.Ct. 2501].) ■ "[T]here are three recognized methods by which evidence that is the 'fruit of the poisonous tree' may be admissible despite its illegal origins: (1) if there was an independent source for the evidence, (2) if it would have been available due to inevitable discovery, (3) or if the connection between the source and the evidence has been sufficiently attenuated. [Citation.]" (*In re Javier A.* (1984) 159 Cal.App.3d 913, 926 [206 Cal.Rptr. 386].)

■ Here, Wilkins established a nexus between the unlawful detention and the challenged evidence based upon the chain of events. Consequently, the burden shifted to the People to argue and prove that the evidence seized was admissible under one of the exceptions to the exclusionary rule. ■ The government failed to meet that burden of proof.

Conceivably, the prosecution might have been able to show and success-fully argue in the trial court that the challenged evidence would inevitably have been discovered if the officer had acted in a lawful manner. But, that theory was not asserted below. In *Green* v. *Superior Court* (1985) 40 Cal.3d 126, 138 [219 Cal.Rptr. 186], such an omission was held not to preclude appellate consideration where the facts supporting the theory were fully developed in the trial court. Here, on the other hand, that was not done.

The judgment is reversed and the cause remanded to the trial court. Upon a motion to withdraw defendant's guilty plea within 30 days of the finality of this decision, the trial court is directed to vacate the guilty plea, reinstate all charges and allegations contained in the information, and proceed in accordance with the views expressed herein. If a timely motion is not made or defendant waives the right to withdraw his plea, the trial court is directed to reinstate the judgment. (Cf. *People* v. *Miller* (1983) 33 Cal.3d 545, 550-556 [189 Cal.Rptr. 519, 658 P.2d 1320]; *People* v. *Rios* (1976) 16 Cal.3d 351, 357-358 [128 Cal.Rptr. 5, 546 P.2d 293].)

O'Farrell, J.,* concurred.

**AGLIANO, P. J.,** Concurring.—I concur in the judgment but for different reasons. In my view the facts suggest that the claimed illegal detention (blocking defendant's vehicle) was not a factor in the officer's detection of burning incense which spurred further lawful investigation; that the con-traband, rather, was the independent product of the officer's contact with defendant which was consensual and lawful; that any detention was related only temporally to the discovery of evidence and was not a factor which facilitated or otherwise contributed to discovery of the evidence. In my view, the evidence, under such circumstances, would have been lawfully obtained. (See *People* v. *Bailey* (1985) 176 Cal.App.3d 402, 406-409 [222 Cal.Rptr. 235] (dis. opn.).)

As the lead opinion points out, however, the hearing below was conducted on a different theory. The facts regarding the theory of independent source

---

*Assigned by the Chairperson of the Judicial Council.

not having been fully developed, it would not be appropriate to resolve the case on that theory now.